**DISTRICT OF COLUMBIA, Appellant,**

v.

**Thomas A. YOUNG, Appellee.**

**No. 11–CV–265.**

District of Columbia Court of Appeals.

Submitted Feb. 2, 2012.

Decided March 8, 2012.

---

Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Mary L. Wilson, Senior Assistant Attorney General, were on the brief for appellant.

Martin F. McMahon, Washington, DC, entered an appearance for appellee. No brief was filed for appellee.

Before GLICKMAN and FISHER, Associate Judges, and SCHWELB, Senior Judge.

GLICKMAN, Associate Judge:

Appellant, the District of Columbia, sued appellee, Thomas A. Young, in Superior Court to recover unpaid taxes. The parties eventually entered into a settlement agreement requiring Young to make a series of payments to the District over the succeeding eighteen months. A disagreement then arose between the parties as to the proper disposition of the District's pending lawsuit in the interim period before Young completely satisfied his payment obligations under the settlement agreement. The District proposed to dismiss its complaint without prejudice, so that it could be reinstated in the event Young defaulted on his payment obligations. But Young countered that the District had foregone that remedy by entering into the settlement, and he maintained that the complaint had to be dismissed with prejudice. Young filed a motion pursuant to Civil Rule 41(b)[1] requesting such a dismissal. Over the opposition of the District, the trial court granted Young's motion, and the District has appealed. Because we agree with the District that the settlement agreement was an executory accord until Young fully satisfied his obligations under it, and that as such (and by its express terms) the agreement allowed the District to enforce its original claim against Young in the event he defaulted on his payment obligations, we must vacate the trial court's order.[2]

## I.

The District filed a complaint against Young in 2007, and amended it in 2009, to recover unpaid unincorporated business franchise taxes and sales and use taxes. With penalties, fees, and interest, the District's claim totaled $251,036.84. In connection with that claim, the District filed certificates of delinquent tax with the District's Recorder of Deeds. These certificates reflected tax liens against Young exceeding $210,000 in total amount.[3]

On May 27, 2010, the District and Young entered into a settlement agreement ("the Agreement") whereby Young agreed to pay $35,000 to settle his "Tax Liabilities" plus $1,500 in additional interest. The term "Tax Liabilities" is defined by the Agreement to mean the unincorporated business franchise and sales and use tax liabilities (including fees, penalties and interest) that were the subject of the District's amended complaint against Young. The District agreed to accept the substantially reduced "Settlement Amount" of $36,500 as a "full and final settlement." To effectuate this arrangement, the Agreement specified a payment schedule: Young was required to make a partial payment of $7,000 by May 28, 2010, followed by eighteen monthly installment payments of $1,638.89 from June 22, 2010, until November 22, 2011. Of relevance to this appeal, the Agreement contained the following additional provisions (emphasis added):

1. Super. Ct. Civ. R. 41(b).

2. Although more than eighteen months have elapsed since Young's payment obligations commenced under the settlement agreement, this case has not become moot. The District represents, and Young does not deny, that he is behind in his payments.

3. As the certificates state, they have the force and effect, as against the delinquent taxpayer, of a lien created by a judgment of the Superior Court. *See* D.C.Code § 47–4421(a) (2011 Supp.) (providing, *inter alia,* that the tax lien "shall attach to all property (including rights to property) belonging to, or acquired by, the person at any time during the period of the lien").

6. The occurrence of any of the following events shall constitute an "Event of Default":

> (a) The failure of the Taxpayer to pay any Monthly Installment when due.
>
> (b) If any material representation made by the Taxpayer in or pursuant to this Agreement is incorrect, untrue or misleading.
>
> . . . .

8. Upon the occurrence of any Event of Default described in Section 6 of this Agreement, which is not fully cured within sixty (60) days, the District may pursue enforcement of this Agreement *and/or collection of the taxes owed*, by any means permitted under law.

. . . .

10. Upon the completion of the Taxpayer's obligations under this Agreement, [the Office of Tax and Revenue] will release, within forty-five (45) days of the final payment, all certificates of delinquent tax filed with the District of Columbia Recorder of Deeds, associated with the Tax Liabilities, as set forth on Exhibit B. If the District fails to release the related liens as stated, the Taxpayer shall file suit for all direct, indirect and consequential damages arising from this breach.

The Agreement did not address explicitly the disposition of the District's pending lawsuit against Young. After the Agreement was executed, the District prepared a joint stipulation of dismissal without prejudice, reflecting its understanding that pursuant to Paragraph 8, it could re-file its complaint for the full amount of Young's alleged Tax Liabilities upon the occurrence of an uncured Event of Default. But Young argued that the District, having entered into the settlement, was barred from ever suing him on its original claim, and, even in the event of a default in payment on his part, could seek only to enforce the payment obligation established in the Agreement. Young accordingly moved the trial court to dismiss the District's complaint against him with prejudice, even though the Agreement remained to be fully performed.

The court agreed with Young. It reasoned that because the District had agreed to accept $36,500 as a "full and final settlement," and Young had begun making the required payments,[4] the parties had "entered into a valid accord and satisfaction," and therefore "any attempted reservation [by the District] of the right to relitigate these issues and seek the original debt amount is barred."[5] Although the court acknowledged "the parties' agreement that the Office of Tax and Revenue [would] not release the Certificates of Delinquency until after [Young] fully performed the Agreement," it said that provision "in no way enables [the District] to bring suit for recovery of the original amount owed, neither by clear language nor by any reasonable inference."

## II.

▮ The District contends that the Agreement is not ambiguous, and that the trial court misconstrued it. The question

---

**4.** At the time the dispute was put before the trial court, Young had made the first two payments required by the Agreement.

**5.** The court also stated that the District's "argument that a reasonable person would not have read the Agreement to mean that [the District] could not relitigate the claims as the settlement amount was substantially lower than the amount owed is factually unsupported, legally infirm and if credited, would defeat the purpose of settlement agreements. Expeditious disposition of a disputed matter often means that neither party is completely satisfied with the outcome."

of the Agreement's proper interpretation, including whether or not it is ambiguous, is one of law, and our review on this point is *de novo.*[6] Here our focus must be on the written language of the Agreement, for where that language applies, it governs the rights and liabilities of the parties regardless of their intent when they entered into the contract, "unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress, or mutual mistake."[7] In determining whether a contract is ambiguous, "we examine the document on its face, giving the language used its plain meaning," without "tortur[ing] words to import ambiguity where there is none."[8] Our construction is guided by the terms of the Agreement in its entirety—which means we must strive to give "reasonable effect to all its parts" and eschew an interpretation that would render part of it meaningless or incompatible with the contract as a whole.[9]

 We agree with the District that the trial court's ruling was not supported by the doctrine of accord and satisfaction. To establish an accord and satisfaction that would discharge and terminate a disputed claim, there must be not only "a mutual agreement that the debtor will pay and the creditor will accept something other than the original amount due in satisfaction of the disputed claim," but also "the actual giving and taking of the agreed upon substitution."[10] Where, as here, a settlement agreement provides for future payments in satisfaction of a claim, there is no accord and satisfaction until all the payments have been made; until then, the agreement is "a mere executory accord."[11] And if the debtor breaches the executory accord by failing to make all the payments due, his part performance does not preclude the creditor from resurrecting the original claim that was to have been extinguished by the settlement:

> Part performance of an executory accord by the debtor, accompanied by an unjustified failure to perform the remainder, neither operates as satisfaction of the accord nor discharges the original claim. More important, if the debtor breaches the executory accord, part performance does not bar the claimant's action on its original claim.[12]

At the time the trial court entered its order of dismissal, Young had not fulfilled his payment obligations under the Agreement. Thus, because there was only an executory accord at that time, the doctrine

---

6. *See Dyer v. Bilaal,* 983 A.2d 349, 355 (D.C. 2009).

7. *Id.* (internal quotation marks omitted). There is no claim in this case of fraud, duress, or mutual mistake.

8. *Id.* (citations and internal quotation marks omitted).

9. *Caglioti v. Dist. Hosp. Partners, LP,* 933 A.2d 800, 811 (D.C.2007) (reading a settlement agreement as a whole, and concluding that a party's failure to explicitly reserve a right to pursue a claim of equitable indemnification could not be taken to mean that he did not reserve that right where such an interpretation would render portions of the agreement meaningless).

10. *Double H Hous. Corp. v. David,* 947 A.2d 38, 43 (D.C.2008) (internal quotation marks omitted).

11. *Stinson v. Mueller,* 449 A.2d 329, 332 (D.C. 1982) (holding that where there is a written agreement to pay a certain amount in satisfaction of a preexisting debt and only a portion of the payment is made, "the failure to fully perform the act required ... left the agreement a mere executory accord, and, as such, it could not constitute a bar to the enforcement of other claims" (footnote omitted)).

12. 13 Sarah Howard Jenkins, Corbin on Contracts § 69.2 at 280 (rev. ed. 2003); *see also Stinson,* 449 A.2d at 332.

of accord and satisfaction did not bar the District from reinstating its original action against Young for his full "Tax Liabilities" upon the occurrence of an uncured Event of Default. We also agree with the District that the Agreement explicitly and unambiguously preserved that option by providing in Paragraph 8 that, in the event of an uncured default, the District could seek *either* to enforce the Agreement *or* to collect the "taxes owed" by any legal means. In the trial court, Young argued that the term "taxes owed" must have meant the Settlement Amount of $36,500, because he had never agreed that he owed any greater sum. We reject that reading of Paragraph 8 as wholly implausible. Not only is it inconsistent with the executory nature of the accord, but by equating the option of collecting the "taxes owed" with the alternative of enforcing the Agreement, it would render the "taxes owed" option superfluous and meaningless.

Furthermore, by expressly providing that the District's tax liens on Young's property would *not* be released until Young fully performed his obligations, Paragraph 10 of the Agreement confirms our reading that, in Paragraph 8, the District retained the right to revive its original claim against Young in the event he defaulted. The total amount of the tax liens was much greater than the Settlement Amount; it reflected the much larger tax liability that the District had claimed. The only reason to defer releasing those liens was to enable the District to recover that larger debt, if Young defaulted, by levying on his property. The continued imposition of the liens would have made no sense if the District could seek to collect only the Settlement Amount.

## III.

Accordingly, we hold that the trial court erred by dismissing the District's complaint with prejudice. It should have granted the District's request to enter a dismissal without prejudice. The District asks us to reverse and instruct the trial court on remand to do just that. However, in light of the District's unrebutted assertion that Young is now in default of his obligations under the Agreement, we think it preferable, in the interest of efficiency, simply to vacate the trial court's order of dismissal with prejudice and remand for further proceedings consistent with this opinion.

*So ordered.*