*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-0861

MOBILIZEGREEN, INC., APPELLANT,

V.

COMMUNITY FOUNDATION
FOR THE CAPITAL REGION, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB5764-14)

(Hon. Neal E. Kravitz & Hon. Fern Flanagan Saddler, Trial Judges)

(Argued January 12, 2021                    Decided January 27, 2022)

*Jeffrey D. Robinson*, with whom *Surya Kundu* was on the brief, for appellant.

*Matthew W. Edwards* for appellee.


Before BECKWITH and DEAHL, *Associate Judges*, and FISHER, *Senior Judge*.

DEAHL, *Associate Judge*: MobilizeGreen was an upstart charitable organization with a mission "to build the next generation of environmental leaders," particularly those from "under-represented communities." In 2011, it sought to

create a national diversity internship program using funds from the United States Forest Service. Because MobilizeGreen had not been approved as a charitable organization under 26 U.S.C. § 501(c)(3), however, the Forest Service indicated it could not disperse funds directly to MobilizeGreen, which would need to engage a fiscal sponsor to receive and manage any funds. MobilizeGreen enlisted a reluctant Community Foundation for the Capital Region to serve as its fiscal sponsor for what the parties agreed would be a brief three-month period. For reasons detailed below, that fraught relationship lasted more than a year, to both parties' chagrin.

MobilizeGreen eventually filed a lawsuit in D.C. Superior Court alleging, as is relevant here, that (1) the Community Foundation breached the parties' agreement when it failed to transfer the fiscal sponsorship to a third party at the conclusion of the three-month arrangement, and (2) the Community Foundation breached a fiduciary duty to MobilizeGreen by mismanaging the Forest Service funds. The Community Foundation moved for summary judgment on those claims, and the trial court granted its motion. It ruled that it was MobilizeGreen, not the Community Foundation, that was contractually obligated but failed to transfer the fiscal sponsorship to a third party. The trial court also determined that the Community Foundation did not have a fiduciary relationship with MobilizeGreen, but that the extent of their relationship was limited to their contractual agreement.

MobilizeGreen challenges both of those rulings on appeal, contending there were genuine disputes of material fact that precluded summary judgment as to each claim. We disagree and affirm.

## I.

In 2011, MobilizeGreen was a start-up organization with a mission "to build the next generation of environmental leaders, stewards, and volunteers from under-represented communities using . . . [an] innovative internship, mentorship, career coaching, and collaborative partnership model." It sought to establish an internship pilot program funded by the United States Forest Service. It was not eligible to receive the contemplated funds from the Forest Service, however, because it was not recognized as a tax-exempt charitable organization under 26 U.S.C. § 501(c)(3). To proceed with its plans, MobilizeGreen needed an established § 501(c)(3) organization to serve as its fiscal sponsor. It approached the Community Foundation to serve as that fiscal sponsor.

The Community Foundation, concerned over its ability to comply with certain government contracting and audit requirements, initially declined MobilizeGreen's request. MobilizeGreen's President and CEO, Leah Allen, persisted. In an effort to alleviate the Community Foundation's concerns, Allen proposed a temporary fiscal

sponsorship arrangement, from late July through November 1, 2011. That agreement would permit the Forest Service to finalize approval of the funding, though Allen promised the Community Foundation that MobilizeGreen would either attain its § 501(c)(3) status, find an alternative sponsor, or terminate its relationship with the Community Foundation "prior to the receipt of actual funding." The Community Foundation accepted Allen's proposal.

The parties then executed a fiscal sponsorship agreement. Under the terms of the agreement, the parties agreed to create a "Sponsored Program Fund," the funds for which MobilizeGreen would "irrevocably" give to the Community Foundation to administer as a "temporary fiscal sponsor[]." Paragraph 4 of the agreement states the fund's sole "purpose" as "further[ing] or carry[ing] out the educational and charitable uses and purposes of the [Community] Foundation," as "specifically set forth in its articles of incorporation and bylaws." Under Paragraph 8 of the agreement, the fiscal sponsorship was "not to exceed November 1, 2011, at which time the Organization [MobilizeGreen] will transfer to another fiscal sponsor." Shortly thereafter, the Community Foundation entered into a "Cost Share Agreement" with the Forest Service under which the Forest Service would reimburse the Community Foundation up to $252,805 for the costs of the internship program.

That agreement between the Community Foundation and the Forest Service was "effective through September 30, 2012." MobilizeGreen was not a party to it.

In October 2011, prior to disbursement of any Forest Service funds, MobilizeGreen entered into a Memorandum of Understanding with a proposed replacement fiscal sponsor, Social and Environmental Entrepreneurs. The Community Foundation "agreed, pending Forest Service approval, to allow [MobilizeGreen] to shift fiscal sponsorship to" that new fiscal sponsor. This transfer could not be completed, however, without the Forest Service's consent. This was because the Cost Share Agreement between MobilizeGreen and the Community Foundation was subject to the Anti-Assignment Act, which provides that a government contract, or any interest under one, cannot be transferred from one party to another unless the government first consents to the transfer. 41 U.S.C. § 6305(a); *Vermont Yankee Nuclear Power Corp. v. Entergy Nuclear Vermont Yankee, LLC*, 683 F.3d 1330, 1339 (Fed. Cir. 2012) ("[G]overnment may consent to or waive any objections it may have to assignments.") (interpreting prior codification of § 6305(a)).

The Forest Service did not provide the required consent because, perhaps among other reasons, nobody asked it to until many months later. It was not until

the following March that Allen finally emailed the Forest Service and requested its consent to the transfer. She explained in her email that the Community Foundation had already agreed to transfer the fund and fiscal sponsorship to a substitute sponsor. Nonetheless, the Forest Service denied that initial transfer request. Some months later, around July 2012, the Forest Service agreed to transfer the grant to another fiscal sponsor effective October 1, 2012, the day after the Cost Share Agreement between it and the Community Foundation expired. The Community Foundation thus remained as fiscal sponsor through September 30, 2012.

Two years later, MobilizeGreen sued the Community Foundation in the Superior Court of the District of Columbia. It claimed (1) breach of contract, owing to the Community Foundation's failure to transfer the fiscal sponsorship to a substitute party, and (2) breach of fiduciary duty, relating to the Community Foundation's alleged mismanagement of Forest Service funds. Following years of litigation—during which the case was removed to federal court and then remanded to the Superior Court[1]—the trial court granted the Community Foundation's motion for summary judgment as to those claims. It determined that it was MobilizeGreen, not the Community Foundation, that had a contractual obligation to effectuate the

---

[1] *See MobilizeGreen, Inc. v. Cmty. Found. for the Nat'l Capital Region*, 101 F. Supp. 3d 36 (D.D.C. 2015).

transfer of the fiscal sponsorship to a substitute party, and it further held that the Community Foundation owed no fiduciary duty to MobilizeGreen. MobilizeGreen now brings this appeal challenging those rulings.[2]

## II.

We review a trial court's grant of summary judgment de novo. *Ukwuani v. District of Columbia*, 241 A.3d 529, 541 (D.C. 2020). In doing so, we conduct "an independent review of the record" and apply the same standard as the trial court in considering the underlying motion. *Critchell v. Critchell*, 746 A.2d 282, 284 (D.C. 2000). The moving party, the Community Foundation, is entitled to summary judgment only upon demonstrating that "no genuine issue of material fact remains for trial" and that judgment is warranted "as a matter of law." *Phenix-Georgetown, Inc. v. Charles H. Tompkins Co.*, 477 A.2d 215, 221 (D.C. 1984). "[W]e examine all evidence in the light most favorable to" the non-moving party, MobilizeGreen. *Cain v. Reinoso*, 43 A.3d 302, 307 (D.C. 2012). We will reverse a grant of summary

---

[2] One of MobilizeGreen's claims—a claim for negligent supervision—survived the trial court's summary judgment rulings. However, MobilizeGreen subsequently filed an unopposed motion to dismiss that claim and for entry of final judgment, which the trial court granted, paving the way for this appeal.

judgment if the record would permit a reasonable fact-finder to properly render a verdict in the non-moving party's favor. *Id.*

## A.

We begin with MobilizeGreen's breach of contract claim. MobilizeGreen contends there were genuine issues of material fact regarding whether the Community Foundation failed to uphold a contractual obligation to transfer the fiscal sponsorship to a third party. More specifically, it contends that a reasonable jury could have concluded the Community Foundation breached the fiscal sponsorship agreement by failing to obtain the Forest Service's consent to transfer the sponsored fund and the fiscal sponsorship to a replacement sponsor by the November 1, 2011, deadline. We disagree. Instead, we agree with the trial court that it was MobilizeGreen's obligation to bring about that transfer and that no reasonable jury could have concluded otherwise.

A contract's "proper interpretation, including whether or not it is ambiguous," is a question of law, subject to de novo review. *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012). "[W]e examine the document on its face, giving the language used its plain meaning." *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009) (internal quotation marks omitted). The "written language" of the agreement "will

govern the rights and liabilities of the parties" unless it is ambiguous or inoperative. *Abdelrhman v. Ackerman*, 76 A.3d 883, 888 (D.C. 2013) (citation and internal quotation marks omitted).

The fiscal sponsorship agreement's pertinent provision, Paragraph 8, states that "[t]his fund is established to provide temporary fiscal sponsorship for a period not to exceed November 1, 2011, at which time the Organization [MobilizeGreen] will transfer to another fiscal sponsor." There is some ambiguity in the final clause of that sentence, as it is not entirely clear if MobilizeGreen is the subject that "will transfer" or the object that "will transfer." Either reading is imperfect. If MobilizeGreen is the subject transferor, the contract does not specify what exactly it "will transfer to another fiscal sponsor," though it would appear to refer back to the fund and fiscal sponsorship mentioned earlier in the sentence. If MobilizeGreen is the thing that will transfer to another fiscal sponsor, then the clause does not specify who is to perform the transfer.

We agree with the trial court that the contract is ambiguous on the point. It is fairly susceptible to either reading, including one in which MobilizeGreen is the thing to be transferred to another fiscal sponsor (rather than the transferor charged with transferring the fund and sponsorship). Under that reading, the contract does

not specify which party is responsible for making sure the transfer happens. Given the ambiguity, we may look to extrinsic evidence to elucidate the parties' intentions. *See Aziken v. District of Columbia*, 70 A.3d 213, 219 (D.C. 2013). While summary judgment is often improper when extrinsic evidence is needed to resolve some contractual ambiguity, that is not always the case. *Id*. Summary judgment may yet be appropriate where "the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Id.*

Here, the extrinsic evidence uniformly supports the view that it was MobilizeGreen that took on the obligation to transfer the fiscal sponsorship and sponsored fund to a third party. Most critically, when Allen came to the Community Foundation with the proposed temporary sponsorship arrangement, she did so with a "guarantee to the Foundation that [MobilizeGreen] will have our 501(c)(3) status, *have another fiscal sponsor*, or will terminate the agreement prior to the receipt of actual funding." (emphasis added). Allen's guarantee that MobilizeGreen would "have another fiscal sponsor" is incompatible with the view that it was the Community Foundation's obligation to bring that substitute sponsorship to fruition. Moreover, MobilizeGreen acted consistently with an understanding that it was its obligation to effectuate the transfer. It gave no contemporaneous indications that it was the Community Foundation's obligation to seek the Forest Service's consent,

but instead took upon itself to ask the Forest Service for its consent to the transfer, albeit quite belatedly. While MobilizeGreen now contends a jury might see that as a last-ditch effort to "salvage" a transfer that the Community Foundation had failed to shepherd through, there is simply no evidence that would permit a reasonable jury to draw that conclusion.

Because MobilizeGreen is the party charged with transferring the fiscal sponsorship and the sponsored fund, it likewise had the duty to seek any requisite consent from the Forest Service in order to complete the contemplated transfer. "[A]bsent language in the contract to the contrary, '[a] party who contracts knowing that governmental permission or license will be required'" to carry out its contractual duties "ordinarily assumes the obligation of assuring that permission will be granted." *Mind & Motion Utah Invs., LLC v. Celtic Bank Corp.*, 367 P.3d 994, 1003 (Utah 2016) (quoting 14 James P. Nehf, Corbin on Contracts § 76.5 (2001)); *Colo. Env'ts, Inc. v. Valley Grading Corp.*, 779 P.2d 80, 82 (Nev. 1989) (endorsing jury instruction that "[u]nder Nevada law, one who contracts to render a performance for which government approval is required has the duty of obtaining such approval"); *see also Sacramento Navigation Co. v. Salz*, 273 U.S. 326, 329 (1927) (a contract includes "not only the promises set forth in express words," but all "implied provisions" arising from the contractual language that "are indispensable to

effectuate the intentions of the parties") (citing S. Williston, 3 Williston on Contracts § 1293 (1920)); *accord In re McCagg's Estate*, 450 A.2d 414, 416-17 (D.C. 1982) (collecting authorities).

MobilizeGreen persists that a trier of fact could conclude that it was the Community Foundation's obligation to seek the Forest Service's consent to the transfer because the Community Foundation alone was party to the Cost Share Agreement with the Forest Service. That is beside the point. There is no dispute that the Community Foundation, as a party to the Cost Share Agreement, was bound to cooperate with the contemplated transfer and not obstruct it; MobilizeGreen might have had a viable breach of contract claim had the Community Foundation withheld its consent to such a transfer. But the evidence is undisputed that it complied with that obligation. It "agreed, pending Forest Service approval, to allow [MobilizeGreen] to shift fiscal sponsorship" to a replacement sponsor. The Community Foundation's obligation to cooperate with such a transfer in no way suggests the onus was on it to conduct the necessary outreach to secure the Forest Service's consent in the first place. Because the Community Foundation owed no contractual duty to MobilizeGreen to proactively effectuate the transfer of the fiscal sponsorship and sponsored fund, it did not breach any obligation to do so. The trial

court was correct to grant summary judgment in the Community Foundation's favor on the breach of contract claim.

**B.**

MobilizeGreen next contends that the trial court erred in granting summary judgment on its breach of fiduciary duty claim. In its view, the existence of a fiduciary relationship is a fact-specific inquiry, unfit for summary adjudication, especially where the parties maintained a relationship of trust and confidence. MobilizeGreen maintains there was sufficient evidence that the parties had a fiduciary relationship to preclude summary judgment on the issue. We think the evidence is dispositive to the contrary. To be sure, the existence of a fiduciary relationship tends to be "a fact-intensive question" where summary judgment is often inapt. *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C. Cir. 1996). Yet, as we have made clear, summary judgment is appropriate on a breach of fiduciary duty claim where the uncontroverted record reveals that the defendant did not undertake a duty to act for the plaintiff's benefit. *See, e.g.*, *Fogg v. Fid. Nat'l Title Ins. Co.*, 89 A.3d 510, 513-14 (D.C. 2014) (affirming summary judgment against fiduciary duty claim); *Geiger v. Crestar Bank*, 778 A.2d 1085, 1095 (D.C. 2001) (same); *Newmyer*

*v. Sidwell Friends Sch.*, 128 A.3d 1023, 1037 n.10 (D.C. 2015) (same). That is the case here.

"A fiduciary relationship is founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 584 (D.C. 2015) (citation and internal quotation marks omitted); *see also* Restatement (Second) of Torts § 874 (1979). In some sense all contracting parties put their faith in one another to fulfill their contract's obligations, but it is black-letter law that "[t]he act of . . . entering into a contractual relationship" does not without more give rise to "a fiduciary duty beyond the terms" of the agreement. *Fogg*, 89 A.3d at 513-14. When parties have contracted with one another, the existence of a fiduciary relationship "depend[s] on whether the parties, through the past history of the relationship and their conduct, had extended the relationship beyond the limits of the contractual obligations." *Geiger*, 778 A.2d at 1095 (citation and internal quotation marks omitted); *see also Democracy Partners v. Project Veritas Action Fund*, 453 F. Supp. 3d 261, 279 (D.D.C. 2020) (courts "have traditionally looked for [] a 'special confidential relationship' that transcends an ordinary business transaction") (collecting cases).

Contrary to MobilizeGreen's argument, the undisputed facts show that the parties' relationship was fully set forth within the four corners of their contract. As Allen herself admitted in her deposition, "whatever the [parties'] relationship was supposed to be, it was in that document," the fiscal sponsorship agreement. The contract itself states that (1) MobilizeGreen "irrevocably" "gift[ed]" the fund to the Community Foundation, (2) the Community Foundation would "administer" the fund subject only to *its own* "governing instruments, including its articles of incorporation and bylaws," and (3) the sole purpose of the contract was to "further or carry out the educational and charitable uses and purposes of the [Community] Foundation," without mention of advancing MobilizeGreen's interests. The contract thus contradicts any suggestion that the Community Foundation was to administer the fund for MobilizeGreen's benefit.

MobilizeGreen nonetheless stresses extrinsic evidence of an extra-contractual fiduciary relationship, principally, that the Community Foundation was the more sophisticated party and knew that MobilizeGreen was putting trust in it, beyond fulfilling contractual terms. Even if we put aside Allen's admission to the contrary— that the extent of the parties' relationship "was in that document"—the extrinsic facts are incompatible with MobilizeGreen's view. It was MobilizeGreen that devised this temporary fiscal sponsorship and pressed the Community Foundation to agree

to it despite its initial refusal to do so, not the other way around. More importantly, MobilizeGreen persuaded the Community Foundation to enter into the agreement only by assuring it that the fiscal sponsorship would terminate before the actual receipt of federal funds. That, like the contract the parties ultimately signed, belies any suggestion that MobilizeGreen was placing its trust in how the Community Foundation would administer the Forest Service funds; MobilizeGreen did not anticipate the Community Foundation would ever receive those funds, and instead guaranteed that it would not. The Community Foundation, for its part, never agreed to administer the Forest Service funds for MobilizeGreen's benefit. It hoped to avoid administering the funds at all, but it further made clear in the fiscal sponsorship agreement that its obligation if tasked with administering the fund was to further its own interests and purposes, not MobilizeGreen's. There is no extrinsic evidence to the contrary.

MobilizeGreen persists that even if the parties did not initially have a fiduciary relationship, once the temporary fiscal sponsorship expired without the anticipated transfer to a third party, a fiduciary relationship then arose.[3] But there is no reason

---

[3] MobilizeGreen did not make this argument in its briefs, though it raised it in the trial court and then advanced it at oral argument on appeal. Given its failure to raise the argument in its briefs, "we need not consider it," but exercise our discretion to do so here. *In re Zdravkovich*, 831 A.2d 964, 972 (D.C. 2003).

to think the parties' initial contractual and non-fiduciary relationship somehow transformed at that point. "When a contract lapses but the parties to the contract continue to act as if they are performing under a contract, the material terms of the prior contract will survive intact unless either one of the parties clearly and manifestly indicates" otherwise. *Hahn v. Univ. of District of Columbia*, 789 A.2d 1252, 1258 (D.C. 2002) (quoting *Luden's, Inc. v. Local Union No. 6, Bakery, Confectionery & Tobacco Workers' Int'l Union*, 28 F.3d 347, 355-56 (3d Cir. 1994)); *see also Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc.*, 408 F.3d 460, 467 (8th Cir. 2005) ("When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old.") (quoting *Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir. 1946)).

There is nothing to suggest the Community Foundation accepted any new fiduciary obligations at the end of the anticipated contractual term. To the contrary, the evidence establishes that it sought to avoid being in a position to administer the Forest Service funds at all, but was unwillingly thrust into that role by MobilizeGreen's failure to take the steps necessary to transfer the fiscal sponsorship to a third party. *See supra* Part II.A. As in *Geiger*, "[w]e detect no facts in this case

detailing a history of interaction between [the parties] which extended their relationship beyond the provisions" of the contract.  778 A.2d at 1095.

Finally, we note but do not consider the trial court's alternative rationale for granting summary judgment on the breach of fiduciary duty claim.  The trial court reasoned, in the alternative, that the fiscal sponsorship agreement had to be interpreted as compliant with § 501(c)(3), because it expressly provided that the Community Foundation would administer the sponsored fund subject to its "governing instruments, including its articles of incorporation and bylaws," which establish it as a § 501(c)(3) organization.  The court further reasoned that its § 501(c)(3) status precluded the Community Foundation from taking on fiduciary duties to MobilizeGreen because § 501(c)(3) required it to be "organized and operated exclusively for . . . charitable . . . or educational purposes."  For the Community Foundation to take on fiduciary obligations to another organization would impermissibly subordinate its exclusive charitable mission to its obligations to a third party, or so the reasoning goes.[4]

---

[4] One counterpoint is that there may be no conflict between a § 501(c)(3)'s charitable mission and its fiduciary obligations to a third party, as MobilizeGreen contends was the case here, so that the charitable mission is in no way rendered subservient to a fiduciary duty to another.

While the parties spend a substantial portion of their briefs debating the soundness of that reasoning, we ultimately have no occasion to resolve that dispute. *See Bailey v. United States*, 385 A.2d 32, 36 (D.C. 1978) (invoking the judicial preference for predicating holdings "on narrower grounds"); *see also City of Ontario v. Quon*, 560 U.S. 746, 760 (2010) (disposing of cases "on narrower grounds" is "preferable" where a "broad holding" might have far-reaching "implications for future cases that cannot be predicted"). Whether or not the Community Foundation could have taken on fiduciary obligations to MobilizeGreen consistent with its obligations under § 501(c)(3), the evidence permitted but one conclusion—that it did not do so here.

## III.

The trial court's judgment is affirmed.

*So ordered*.