J-S28023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| FERNANDO REAL | : | |
| Appellant | : | No. 3430 EDA 2019 |

Appeal from the PCRA Order Entered November 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008511-2008,
CP-51-CR-0008526-2008

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| FERNANDO REAL | : | |
| Appellant | : | No. 3431 EDA 2019 |

Appeal from the PCRA Order Entered November 8, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008511-2008,
CP-51-CR-0008526-2008

BEFORE:   BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 1, 2022**

Appellant, Fernando Real, appeals from the November 8, 2019 Order of

the Court of Common Pleas of Philadelphia County, which dismissed without

a hearing Appellant's first petition filed pursuant to the Post Conviction Relief

_____

[*] Retired Senior Judge assigned to the Superior Court.

Act, 42 Pa.C.S. §§ 9541-46. Appellant's PCRA counsel, John M. Belli, Esquire, has filed a ***Turner***/***Finley***[1] "no merit" letter and Application to Withdraw as Counsel. After careful review, we affirm the court's denial of PCRA relief and grant counsel's Application to Withdraw.

In the early morning hours of September 9, 2002, Appellant used a nine-millimeter pistol to shoot and kill Byron Story and Marcus Herbert.[2] Story and Herbert had been sitting on the front porch of a home occupied by Herbert's stepfather, Karl May. Hearing the gunshots, May went to a window and witnessed the shooter fleeing the scene. May told police immediately after the shooting that he witnessed a black male fleeing but, as discussed below, May testified at trial that the shooter was a Hispanic male matching Appellant's description.

At the time of the shooting, Appellant's companion, Terrell Boyd, was acting as lookout around the corner. The pair returned to their car where Appellant informed Boyd that he had shot two men.

Two days later, on September 11, 2002, Appellant shot and killed Levon Wilson.[3] Brian Heard and Ronald Milburn witnessed the shooting. Police Officer Christine Hilbert immediately responded to the shooting and saw Appellant

---

[1] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[2] Story died at the scene, and Herbert died from his injuries approximately a year later.

[3] A jury convicted Appellant of Wilson's murder in a separate proceeding on June 28, 2005. Wilson's murder is not at issue in this appeal.

fleeing from the scene. Police recovered the murder weapon—a nine-millimeter pistol—and determined it was the same pistol used to shoot Story and Herbert two days earlier.

Appellant's consolidated jury trial for Story and Herbert's murders began on February 18, 2014.[4] The Commonwealth presented testimony from 24 witnesses. Karl May, victim Herbert's stepfather, testified to witnessing a Hispanic male fleeing the scene of the shooting and Appellant's counsel cross-examined May using his prior inconsistent statement to police. Officer Hilbert testified to her identification of Appellant running away from the Wilson murder and investigation involving the firearm used in the three murders.

In addition, the court permitted Heard and Milburn,[5] the witnesses to the unrelated Wilson shooting, to testify generally that they saw Appellant fire the pistol on September 11, 2002. The court, however, did not permit them to testify that Appellant shot and killed Wilson. The trial court also allowed Milburn to testify that he saw Appellant fire the same gun into the air a week before the Story and Herbert murders. When charging the jury, the court gave a specific limiting instruction that the jury could consider Heard's and Milburn's

---

[4] It is not clear from the record why Appellant's trial occurred over 10 years after his arrest. The timeliness of Appellant's trial is not at issue in this appeal.

[5] At some point between Appellant's preliminary hearing and trial, Milburn suffered a severe brain injury in an automobile accident. As a result, the court found Milburn unavailable to testify at Appellant's trial and allowed the Commonwealth to introduce his preliminary hearing testimony into evidence pursuant to Pa.R.E. 804.

testimony only for purposes of establishing Appellant's access to the murder weapon.

On February 25, 2014, a jury convicted Appellant of, *inter alia*, two counts of First-Degree Murder for killing Story and Herbert. On May 1, 2014, the court imposed two consecutive life sentences. This Court affirmed Appellant's Judgment of Sentence and, on May 10, 2016, our Supreme Court denied allowance of appeal. **Commonwealth v. Real**, 134 A.3d 499 (Pa. Super. 2015) (unpublished memorandum), *appeal denied* 138 A.3d 4 (Pa. 2016).

On July 15, 2016, Appellant *pro se* filed the instant, timely PCRA Petition, his first.[6] Appellant thereafter *pro se* filed several amended petitions, which the court accepted.

On November 18, 2019, after issuing a notice pursuant to Pa.R.Crim.P. 907, the court dismissed Appellant's petition without a hearing. On the same day, the court appointed counsel to represent Appellant on appeal.

Appellant timely filed a Notice of Appeal.[7] Through the course of a complex procedural history not relevant here, Appellant's counsel, on January 27, 2021, filed a Statement of Intent to file a no-merit letter pursuant to

---

[6] After a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), the PCRA court permitted Appellant to proceed *pro se*.

[7] The Commonwealth charged Appellant separately at docket numbers 8511-2008 and 8526-2008 for Story and Herbert's murders. Appellant filed separate Notices of Appeal at both dockets, each listing both docket numbers in compliance with **Commonwealth v. Johnson**, 236 A.3d 1141 (Pa. Super. 2020) (*en banc*).

Pa.R.A.P. 1925(c)(4), indicating that Appellant wished to raise numerous issues of ineffective assistance of counsel ("IAC"), **Brady**[8] violations, after-discovered evidence, and PCRA court error. The PCRA court filed a responsive Rule 1925(a) Opinion comprehensively addressing each of Appellant's issues.

In this Court, counsel has filed a **Turner**/**Finley** letter addressing the following issues:

> [1.] The PCRA court committed an abuse of discretion by denying Appellant's discovery request.
>
> [2.] Did the PCRA court commit an abuse of discretion by failing to grant relief or an evidentiary hearing relating to [newly]-discovered evidence provided by witness Brian Heard?
>
> [3.] Did the PCRA court commit an abuse of discretion by failing to grant relief or an evidentiary hearing on his **Brady** claim relating to the Commonwealth's failure to disclose exculpatory evidence, namely, the recantation of witness Brian Heard, identification information concerning an alleged eyewitness named Lisa, statements allegedly made by Herbert regarding what he allegedly told his mother, and contact information concerning Milburn's mother?
>
> [4.] Did the PCRA court commit an abuse of discretion by failing to grant relief or an evidentiary hearing on the following claims asserting that trial counsel provided Appellant with ineffective assistance of counsel for the following reasons:
>
> > [A.] Trial counsel did not investigate appellant's alibi defense. []
> >
> > [B.] Trial counsel did not properly prepare for trial because he did not investigate or interview witnesses named "Lisa," an alleged eyewitness, three friends of co-defendant Terrell Boyd who would have stated that appellant and Boyd were not friends or a[c]quaintances, and Karl May who told police that he knew a female witness.

---

[8] **Brady v. Maryland**, 373 U.S. 83 (1963).

[C.] Trial counsel failed to retain a DNA expert to test the hat collected by police, the gun, and any and all physical evidence.

[D.] Trial counsel failed to attack the completeness and reliability of the investigation conducted by police by presenting evidence that the police did not: (a) interview "Lisa" despite having her description; (b) interview a second female witness identified by Karl May; (c) compare Boyd's DNA to that found on the hat; and (d) consider Boyd as the shooter and primary suspect despite word on the street that he was the shooter; and (e) show Appellant's photograph to "Lisa,["] Lane, and Herbert.

[E.] Trial counsel failed to object when the Commonwealth called Karl May as a witness because May broke sequestration.

[F.] Trial counsel failed to object to the identification of Appellant made by police officer Christine Hilbert because it was deemed unconstitutional by another judge during the litigation of a PCRA petition involving Appellant's other unrelated murder conviction.

[G.] Trial counsel failed first to move to prohibit the Commonwealth from introducing evidence of an unrelated crime indicating that Appellant fired a gun in the air a week prior to the incident in the instant matter and second, for not objecting to closing comments made by the prosecutor during closing argument.

[H.] Trial counsel failed to make a Batson objection to the use of peremptory challenges by the Commonwealth to strike all potential Hispanic *voir dire* persons.

***Turner/Finley*** Ltr. at 7-9 (capitalization omitted, reordered for ease of analysis). Counsel has also filed an Application to Withdraw as Counsel.

On July 6, 2021, Appellant filed a response to counsel's ***Turner/Finley*** Letter in which he raised, verbatim, the following two issues:

[1.] Cumulative material weight of the suppressed evidence;

[2.] Cumulative effect of errors denied Appellant a fair trial.

- 6 -

Response to *Turner*/*Finley* Ltr. at 18, 26.

## Counsel's Application to Withdraw

Before we consider Appellant's issues, we must review counsel's request to withdraw. Counsel is required to review the record and submit a "no merit" letter (1) detailing the nature and extent of his or her review; (2) listing each issue the petitioner wishes to have raised on review; and (3) explaining why the petitioner's issues are meritless. *Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009). Counsel must also send to the petitioner: "(1) a copy of the 'no merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel." *Commonwealth v. Wrecks*, 931 A.2d 717, 721 (Pa. Super. 2007) (citation omitted).

Counsel has complied with each of the above requirements. Counsel has presented a comprehensive review of the issues Appellant seeks to raise on appeal, the appropriate standard of review, and addressed the PCRA court's analysis where appropriate. *Turner*/*Finley* Ltr. at 10-11, 16-41. Counsel concludes that Appellant's claims are without merit. *Id.* at 43-44. In addition, counsel sent Appellant copies of the *Turner*/*Finley* letter and his Application to Withdraw, and he advised Appellant of his rights in lieu of representation. *See* Application to Withdraw as Counsel, 4/15/21, Exh. 1.

Once we determine that counsel has complied with the *Turner*/*Finley* requirements, this Court must conduct an independent review of the record to determine the merits of Appellant's claims. *Wrecks*, 931 A.2d at 721. As

discussed below, our independent review confirms that Appellant's issues are without merit.

## Standard/scope of review

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. ***Commonwealth v. Jarosz***, 152 A.3d 344, 350 (Pa. Super. 2016) (citing ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014)). "This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings." ***Commonwealth v. Anderson***, 995 A.2d 1184, 1189 (Pa. Super. 2010) (citation omitted).

## Discovery request

Appellant's first issue involves the PCRA court's denial of Appellant's discovery request. Pa.R.Crim.P. 902(E)(1) prohibits discovery in PCRA proceedings "except upon leave of court after a showing of exceptional circumstances." What constitutes an exceptional circumstance is within the trial court's discretion to determine, and we will not disturb that determination unless the court has abused its discretion. ***Commonwealth v. Frey***, 41 A.3d 605, 611 (Pa. Super. 2012).

After a thorough review of the certified record, briefs of the parties, applicable law, and PCRA court's opinion, we conclude that there is no merit to Appellant's claim. The Honorable Glenn B. Bronson has authored a comprehensive and well-reasoned analysis addressing this claim with reference to the record and relevant legal authority. Accordingly, we adopt

the PCRA court's opinion in part as our own and affirm the court's denial of relief on these claims. ***See*** PCRA Ct. Op., 3/12/21, at 29 (explaining that Appellant's discovery request was inadequate to establish exceptional circumstances, as it was "comprised entirely of conjecture").

### Newly discovered evidence

In his second issue, Appellant asserts that a recantation by Heard in the unrelated Wilson murder is newly discovered exculpatory evidence for which the PCRA court should have held a hearing in the instant case. ***See*** Petition, 7/15/16, at 2-3; ***Turner***/***Finley*** Ltr. at 19-21.

To obtain relief based on newly discovered evidence, the petitioner must prove, *inter alia*, that the new evidence would likely change the verdict at a new trial. ***Commonwealth v. Small***, 189 A.3d 961, 972 (Pa. 2018). In addition, to prevail on a claim that the PCRA court should have held a hearing, the petitioner must prove the existence of an issue of fact that would entitle him to relief. ***Commonwealth v. Hanible***, 30 A.3d 426, 452 (Pa. 2011).

After a thorough review of the certified record, briefs of the parties, applicable law, and PCRA court's opinion, we conclude that there is no merit to Appellant's claim. The Honorable Glenn B. Bronson has authored a comprehensive and well-reasoned analysis addressing this claim with reference to the record and relevant legal authority. Accordingly, we adopt the PCRA court's opinion in part as our own and affirm the court's denial of relief on these claims. ***See*** PCRA Ct. Op. at 8 (explaining that Heard's recantation of his eyewitness testimony in the unrelated trial would not have

changed the verdict in the instant case because, among other things, it did not exculpate Appellant of the instant murders and Heard's testimony in the instant case only proved Appellant's access to the murder weapon).

### *Brady* claims

In his third issue, Appellant asserts that the Commonwealth committed multiple **Brady** violations by withholding four pieces of allegedly exculpatory evidence. "To establish a **Brady** violation, [the] appellant must demonstrate [that]: the evidence at issue was favorable to him, because it was either exculpatory or could have been used for impeachment; the prosecution either willfully or inadvertently suppressed the evidence; and prejudice ensued." **Commonwealth v. Walker**, 36 A.3d 1, 9 (Pa. 2011) (citation omitted). To satisfy the prejudice prong, the evidence must have been material to the appellant's guilt or punishment. **Commonwealth v. Cam Ly**, 980 A.2d 61, 76 (Pa. 2009). Evidence is material if there is a reasonable probability that, had the Commonwealth disclosed it to the defense, the result of the proceeding would have been different. **Id.**

Finally, in the PCRA context, an appellant "must establish that the alleged **Brady** violation 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012) (quoting 42 Pa.C.S. § 9543(a)(2)(i)).

After a thorough review of the certified record, briefs of the parties, applicable law, and PCRA court's opinion, we conclude that there is no merit

to Appellant's **Brady** claims. The Honorable Glenn B. Bronson has authored a comprehensive and well-reasoned analysis addressing each of these claims with reference to the record and relevant legal authority. Accordingly, we adopt the PCRA court's opinion in part as our own and affirm the court's denial of relief on these claims. **See** PCRA Ct. Op. at 8-14 (explaining that Appellant failed to prove that he suffered prejudice from the Commonwealth's alleged suppression of evidence that was either not exculpatory (Heard's recantation of unrelated murder testimony), non-existent ("Lisa" or any statement by Herbert), or "that the Commonwealth had knowledge of any contact information for Milburn's mother that was not available to the defense.").[9]

## Ineffective assistance of counsel

In his fourth issue, Appellant asserts eight IAC allegations. The law presumes counsel has rendered effective assistance. **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). "[T]he burden of demonstrating ineffectiveness rests on [the] appellant." **Id.** To satisfy this burden, the appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness,

---

[9] Appellant asserts that he suffered prejudice from the cumulative effect of these **Brady** claims. **See** Response to **Turner**/**Finley** Ltr. at 18. "The cumulative impact of meritless **Brady** claims cannot be grounds for relief." **Commonwealth v. Lambert**, 884 A.2d 848, 857 (Pa. 2005). As discussed above, each of Appellant's **Brady** claims is meritless and, thus, this claim fails.

there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003) (citation omitted). Failure to satisfy any prong of the test will result in rejection of the appellant's claim. ***Id.***

Several of Appellant's IAC claims relate to counsel's decision not to investigate certain issues or interview and call certain witnesses to testify at trial. Where a petitioner alleges ineffectiveness for failure to call a witness, the petitioner must prove that (1) the witness existed and was available and willing to testify; (2) counsel knew or should have known of the witness; and (3) there is a reasonable probability that the witness's testimony would have led to a different outcome at trial. ***See Commonwealth v. Dennis****,* 17 A.3d 297, 302 (Pa. 2011); ***Commonwealth v. Pander***, 100 A.3d 626, 639 (Pa. Super. 2014).

After a thorough review of the certified record, briefs of the parties, applicable law, and PCRA court's opinion, we conclude that there is no merit to Appellant's IAC claims. The Honorable Glenn B. Bronson has authored a comprehensive and well-reasoned analysis addressing each of Appellant's first six claims with reference to the record and relevant legal authority. Accordingly, we adopt the PCRA court's opinion in part as our own and affirm the court's denial of relief on these six claims. ***See*** PCRA Ct. Op. at 16 (concluding that Appellant provided mere conjecture that he was at work at the time of the murders and, therefore, failed to prove the arguable merit of his underlying alibi defense); 16-18 (Appellant failed to prove that "Lisa," a

different "female witness" allegedly known to May, or Boyd's friends were available and willing to testify and that their individual testimonies would have changed the outcome of trial); 19-23, 28-29 (Appellant failed to prove that trial counsel's decisions (1) not to retain a DNA expert to conduct testing when the Commonwealth's expert did not incriminate Appellant; (2) to attack the adequacy of certain elements of the police investigation, (3) to cross-examine May using May's prior, inconsistent statement rather than seeking to strike May's testimony, and (4) not to lodge a meritless objection to Officer Hilbert's trial testimony, were unreasonable and caused Appellant to suffer prejudice).

**Failure to object to testimony by Milburn**

In his seventh IAC claim, Appellant alleges that his trial counsel was ineffective for failing to object to Milburn's testimony that he saw Appellant firing the murder weapon into the air outside of a bar a week before the Story and Herbert murders. *See* Petition, 4/26/18, at 12-14; *Turner*/*Finley* Ltr. at 42-46. *See also* N.T. Trial, 2/24/14, at 130-31, 137-40.

At trial, Milburn testified that, in addition to seeing Appellant with the murder weapon a week before the Story and Herbert's murders, he also witnessed Appellant shoot the same pistol at a craps game on September 11, 2002, after the murders.[10] N.T. Trial, 2/24/14, at 131-37, 140-41. Milburn's testimony, therefore, proved that Appellant possessed the firearm used to kill

---

[10] We affirmed the admissibility of Milburn's testimony regarding the September 11, 2002 shooting on direct appeal. *See Real*, 2015 WL 7354731 at *2, *9-10. At issue presently is Milburn's testimony that he saw Appellant with the gun a week before the Story and Herbert murders.

Story and Herbert both before and after their murders and, thus, demonstrated that Appellant had access to the murder weapon.[11] *See* PCRA Ct. Op. at 26.

At the close of trial, the court instructed the jury to consider Milburn's testimony "only for [the] limited purpose" of demonstrating access to the murder weapon and not that Appellant was a person of bad character:

> [You may consider Milburn's testimony only] for the purpose of showing defendant's alleged access to the weapon that was allegedly used to kill the decedents in this case. This evidence must not be considered by you in any other way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T. Trial, 2/25/14, at 27-28.

Appellant alleges that counsel's failure to object to Milburn's testimony that he had fired the murder weapon in the air the week before using it to kill Story and Herbert invited the jury to consider Appellant's past deeds as evidence of his bad character, causing Appellant to suffer prejudice. Petition, 4/26/18, at 12-13.

We disagree. A cautionary jury instruction may ameliorate the prejudicial effect of evidence of a defendant's relevant prior conduct.

---

[11] Pa.R.E. 404(b)(1) precludes evidence of a crime, wrong, or other act to prove that a person acted in accordance with a particular character trait. This evidence may be admissible for another purpose, however, such as proving identity. *Id.* at 404(b)(2). Appellant does not challenge the relevance of Milburn's testimony to establish Appellant's identity as Story and Herbert's killer.

*Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). This is because "[j]urors are presumed to follow the trial court's instructions." *Id.*

The trial court's cautionary instruction in this case ameliorated any chance that Milburn's testimony caused Appellant to suffer prejudice because the court specifically instructed the jury not to consider Milburn's testimony as evidence of Appellant's bad character and we presume that jurors follow court instructions. As a result, we conclude that Appellant has failed to prove that counsel's inaction caused him to suffer prejudice and this claim fails.[12]

**Failure to make second *Batson* objection**

In his final IAC claim, Appellant alleges that his trial counsel was ineffective for not objecting to the Commonwealth's use of a preemptory challenge to strike a Hispanic juror. *See* Petition, 4/26/18, at 11-12; *Turner*/*Finley* Ltr. at 38-42.

In total, the Commonwealth used four preemptory challenges to remove several prospective jurors who were Hispanic from the jury panel. *Turner*/*Finley* Ltr. at 38-39; PCRA Ct. Op. at 25. After the Commonwealth

---

[12] Appellant also alleges that his counsel was ineffective for failing to object to the Commonwealth's statement during closing that Milburn's testimony proved Appellant's access to the murder weapon. *Turner*/*Finley* Ltr. at 44-45. *See* N.T. Trial, 2/24/14, at 249-50, 275-76. Since Appellant has failed to prove that Milburn's testimony was inadmissible, however, Appellant has not established that the Commonwealth's commentary on Milburn's testimony was improper. Appellant has, therefore, failed to prove the underlying merit of this IAC claim and, as a result, it fails.

struck the third Hispanic juror, Appellant lodged a **Batson**[13] objection, arguing that the Commonwealth struck the jurors based on race. PCRA Ct. Op. at 25. The court overruled Appellant's objection, finding that the Commonwealth provided race-neutral reasons for each preemptory challenge. **Id.** (citing N.T. trial, 2/11/14, at 224-36). The Commonwealth later exercised an additional preemptory challenge to strike a fourth Hispanic juror. **Id.** Appellant's trial counsel did not assert a second **Batson** objection.

Appellant is critical that his counsel did not lodge a second **Batson** objection when the Commonwealth struck a fourth Hispanic juror because it resulted in a fully non-Hispanic jury. **See** Petition, 4/26/18, at 12; **Turner**/**Finley** Ltr. at 40.

Where, as here, a petitioner alleges ineffective assistance of counsel for failure to make a **Batson** challenge, the petitioner "must prove actual, purposeful discrimination by a preponderance of the evidence[.]" **Commonwealth v. Sepulveda**, 55 A.3d 1108, 1132 (Pa. 2012) (citation omitted). Critically, "mere disparity of number in the racial make-up of the jury, though relevant, is inadequate to establish a [**Batson** claim]." **Commonwealth v. Wilson**, 649 A.2d 435, 443 (Pa. 1994) (citation omitted).

Appellant makes no effort to prove actual, purposeful discrimination. Instead, he simply alleges that because "every juror was white or black[,]" then the Commonwealth must have violated **Batson** and his trial counsel

---

[13] **Batson v. Kentucky**, 476 U.S. 79 (1986) (prohibiting the use of race-based preemptory challenges).

should have objected. Petition, 4/26/18, at 12 (unnecessary capitalization omitted). Since racial disparity is inadequate to establish a **Batson** violation, Appellant has not proved the underlying merit of this IAC claim. As a result, this claim fails.

### Cumulative prejudice

In his *pro se* reply to counsel's **Turner**/**Finley** Letter, Appellant argues generally that he suffered prejudice from the cumulative effect of the alleged ineffectiveness of his trial counsel. **See** Petition, 4/26/18, at 15-16; Response to **Turner**/**Finley** Ltr. at 26.

Beyond citing to case law recognizing that a claimant may potentially suffer cumulative prejudice, Appellant has failed to set forth any factually and legally supported argument for his claim. An appellant must develop claims with citation to the record and relevant case law, and a failure to do so will result in waiver. **Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009). **See** Pa.R.A.P. 2111 and 2119 (listing argument requirements for appellate briefs), 2101 (explaining that substantial briefing defects may result in dismissal of appeal). Appellant's failure to develop this issue renders it waived.

### Conclusion

Based on the foregoing, we affirm the PCRA court's denial of relief. The parties are instructed to annex the PCRA Court's March 12, 2021 Opinion to any future filings.

Application to Withdraw as Counsel granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/1/2022

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF            :        CP-51-CR-0008511-2008
PENNSYLVANIA              :        CP-51-CR-0008526-2008
                         :        **Received**
v.                       :
                         :        MAR 1 2 2021
FERNANDO REAL            :
                                  Office of Judicial Records
                                  Appeals/Post Trial
              OPINION

BRONSON, J.                                    March 12, 2021


On February 25, 2014, following a capital murder jury trial before this Court, defendant

Fernando Real was convicted of two counts of first degree murder (18 Pa.C.S. § 2502), two

counts of robbery (18 Pa.C.S. § 3701), one count of conspiracy to commit robbery (18 Pa.C.S. §

903), and one count of carrying a firearm without a license (18 Pa.C.S. § 6106). On February 28,

2014, the jury returned a verdict of life in prison on both counts of first degree murder. The

Court deferred the imposition of sentence and ordered a presentence report and mental health

evaluation. On May 1, 2014, before the commencement of sentencing, defendant asked to

represent himself at sentencing and on appeal. After a hearing, the Court granted defendant's

request to proceed *pro se*. The Court thereafter imposed an aggregate sentence of two

consecutive life sentences plus 21 to 67 years incarceration in state prison. Defendant filed post-

sentence motions, which the Court denied on August 15, 2014.

On November 20, 2015, the Superior Court affirmed defendant's judgment of sentence.

On May 10, 2016, the Supreme Court denied defendant's petition for allowance of appeal. On

July 15, 2016, defendant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA").

David S. Rudenstein, Esquire was appointed to represent defendant on July 12, 2017. On

January 18, 2018, Mr. Rudenstein filed an amended PCRA petition. Defendant filed a motion to waive counsel and proceed *pro se* on April 26, 2018. That same day, defendant filed a *pro se* amended PCRA petition ("Amended Petition"). The Court held a *Grazier* hearing[1] on July 20, 2018, and defendant's motion to proceed *pro se* was granted. Thereafter, defendant filed several supplemental PCRA petitions as well as replies to two motions to dismiss filed by the Commonwealth. On September 23, 2019, after reviewing all of the pleadings, this Court ruled that the claims set forth in defendant's petition were without merit. That day, pursuant to Pa.R.Crim.P. 907, the Court issued notice of its intent to dismiss defendant's PCRA petition without a hearing ("907 Notice"). On October 7, 2019, defendant filed a response to the 907 Notice ("907 Response"). On November 8, 2019, the Court entered an order dismissing defendant's PCRA petition. Because defendant had informed the Court that he wished to have counsel for an appeal if his petition was dismissed, the Court appointed Douglas L. Dolfman, Esquire, to represent defendant on appeal.

On November 18, 2019, defendant filed a *pro se* Notice of Appeal from the Court's dismissal of his PCRA Petition. On December 6, 2019, the Court issued an order pursuant to Pa.R.A.P. 1925(b) ("1925(b) order") directing defense counsel to file a Concise Statement of Errors Complained of on Appeal ("Statement of Errors") by December 27, 2019. Mr. Dolfman failed to file a Statement of Errors, leading this Court to find that all issues had been waived in an opinion filed on January 27, 2020.

---

[1] A *Grazier* hearing is a hearing to determine whether a defendant has properly waived his right to counsel and may lawfully proceed *pro se*. *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

On September 28, 2020, The Superior Court removed Mr. Dolfman as counsel after repeated failures to file a brief. On December 22, 2020, after remand from the Superior Court, the trial court appointed John Belli, Esquire to represent defendant on appeal.[2]

On January 27, 2021, Mr. Belli filed a statement of intent to file a no-merit letter on appeal pursuant to Rule 1925(c) of the Pennsylvania Rules of Appellate Procedure, on the ground that the claims raised by defendant were "wholly frivolous and the record contains no other meritorious issues." Matters Complained of on Appeal ("Statement of Matters"). In his Statement of Matters, Mr. Belli sets forth the following issues that defendant wishes to raise on appeal: A) the PCRA Court erred by failing to grant relief or an evidentiary hearing on defendant's after-discovered evidence claim relating to witness Brian Heard; B) the PCRA Court erred by failing to grant relief or an evidentiary hearing on defendant's claims relating to the Commonwealth's failure to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963);[3] C) the PCRA Court erred by failing to grant relief or an evidentiary hearing on defendant's claims that trial counsel was ineffective for: 1) failing to investigate defendant's alibi defense, 2) failing to properly prepare for trial due to his failure to interview and investigate potential witnesses, 3) failing to retain a DNA expert, 4) failing to attack the completeness and reliability of the police investigation, 5) failing to object to the Commonwealth calling Karl May as a witness after he violated sequestration, 6) failing to raise a *Batson* objection, 7) failing to move to prohibit the Commonwealth from introducing evidence of an unrelated crime and failing to object to comments made in the Commonwealth's closing argument relating to that unrelated crime, and 8) failing to object to the identification of defendant made by Police Officer Christine

---

[2] Before Mr. Belli was appointed, the Court had appointed James F. Berardinelli, Esquire, to replace Mr. Dolfman. However, prior to the remand, the Superior Court permitted Mr. Berardinelli to withdraw as counsel.
[3] Defendant's first and second claims have been reordered for ease of analysis.

3

Hilbert;[4] and D) the PCRA Court erred by denying defendant's discovery request. Statement of

Matters at ¶¶ A-D. For the reasons set forth below, defendant's claims are without merit, and the

Court's order dismissing defendant's PCRA petition should be affirmed.

## I. FACTUAL BACKGROUND

The facts of this case were set forth in this Court's Rule 1925(a) Opinion filed in defendant's

direct appeal as follows:

At trial, the Commonwealth presented the testimony of Philadelphia Deputy Sheriff Bilin Cabrera, Philadelphia Police Detective James Burke, Philadelphia Police Officers James Putro, William Whitehouse, Christine Hilbert, Craig Perry, John Cannon, William Lackman, Lamont Fox, and Theresa Paris, North Hampton Township Police Officer Ryan Share, Federal Bureau of Investigation Agent Edward Frimel, New Jersey State Police Detective Louis Kinkle (Ret.), New Jersey State Police Lieutenant Mark Rowe, [Maple Shade], New Jersey Police Officer James Gillespie, Medical Examiners Dr. Marlon Osbourne and Dr. Ian Hood, Lissette Vega, Brian Heard, Terrell Boyd, Willie Hines, Karl May, and Gabriel Piorko. Defendant presented by stipulation the testimony of James Lane and Philadelphia Police Officer Alebert Revel. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

In the early morning hours of September 9, 2002, defendant and Terrell Boyd, who had known each other since childhood, were driving around the Frankford section of Philadelphia looking for someone to rob.[5] N.T. 2/19/14 at 19-21. While driving in defendant's white Ford Taurus, defendant showed Boyd a nine millimeter firearm. N.T. 2/19/14 at 21-22; 2/24/14 at 93-94. At approximately 4:30 a.m., after one failed robbery attempt, defendant and Boyd drove to Hawthorne Street. N.T. 2/18/14 at 150; 2/19/14 at 23-24. Upon arriving at Hawthorne Street, Boyd agreed to stand watch for defendant at the corner of Hawthorne and Bridge Street. N.T. 2/19/14 at 25, 44, 153, 235. Boyd did not wish to be seen on the block, as his children's mother lived in that location at the time and Boyd feared that he could be recognized. N.T. 2/19/14 at 24-25.

Leaving Boyd at the corner, defendant approached Marcus Herbert and Byron Story, who were sitting on the porch outside of Herbert's home. N.T. 2/19/14 at 153, 232. Defendant initiated a conversation with Story and Herbert, asking if they had any marijuana to sell. N.T. 2/19/14 at 153. Defendant then shot Story once, at close range, in the head. N.T. 2/19/14 at 153; 2/20/14 at 75-77. Once Story had been shot, Herbert attempted to run, whereupon defendant shot Herbert twice in the back. N.T. 2/19/14 at 153; 2/24/14 at 112, 114-116.

---

[4] Officer Christine Hilbert was previously named Christine Vincent. Defendant's Statement of Matters refers to her as Christine Vincent. Statement of Matters at ¶ C(8).

[5] Defendant was also known as "T". N.T. 2/19/14 at 19. Boyd was also known as Joey Black. N.T. 2/19/14 at 20.

4

Upon hearing the three gunshots, Boyd ran back to defendant's parked car and awaited defendant's return. N.T. 2/19/14 at 27-28, 154. Shortly thereafter, defendant returned to the car. N.T. 2/19/14 at 28-29, 233-234. Boyd told defendant not to slam the car door shut, fearing that someone would look in the direction of the noise and see defendant's vehicle. N.T. 2/19/14 at 28-29. Defendant and Boyd then left the area. N.T. 2/19/14 at 29. While driving away from Hawthorne Street, defendant told Boyd that he had shot one person in the head and one person twice in the back as the person tried to run. N.T. 2/19/14 at 29-30. Defendant further stated that he had taken a small amount of money and some marijuana from the people he had shot. N.T. 2/19/14 at 30.

Shortly after the shooting, police responded to the scene and observed Story lying on the porch, bleeding from the head. N.T. 2/18/14 at 151; 2/19/14 at 234. Police also encountered Herbert lying on the ground in front of the house, bleeding from his back. N.T. 2/18/14 at 151. Herbert informed police that he had been shot by a Hispanic male with short cropped hair, wearing a white shirt and blue jeans, and carrying a black handgun. N.T. 2/18/14 at 152. Herbert was transported to Hahnemann University Hospital for treatment, while Story was pronounced dead at the scene. N.T. 2/18/14 at 152-153. Police recovered two fired 9 millimeter cartridge cases at the scene of the shooting. N.T. 2/18/14 at 172-173, 185. Herbert died on October 2, 2003, more than one year after the shooting, due to multiple recurring infections as a result of the gunshot wounds he had received. N.T. 2/24/14 at 117-118.

On September 11, 2002, in the Whitehall Projects in the Frankford section of Philadelphia, two days after the shooting of Story and Herbert, defendant was seen by Ronald Milburn at the scene of a craps game firing a nine millimeter firearm multiple times. N.T. 2/20/14 at 138-139, 151-153, 166; 2/24/14 at 130, 144.[6]  Milburn had seen defendant in a bar approximately one week earlier in possession of what appeared to be that same weapon. N.T. 2/24/14 at 130-131. At the time that defendant fired the gunshots at the craps game, Police officers Christine Hilbert[7] and Stanley Galiczynski were parked in a marked police car on the 4900 block of Cottage Street. They heard the gunshots coming from the Whitehall Projects immediately to their south. N.T. 2/19/14 at 177-178. As the officers approached the area, Officer Hilbert saw defendant run from the area where the shots had been fired. N.T. 2/19/14 at 179, 207; 2/24/14 at 131, 144. Upon seeing the police vehicle, defendant flattened himself against a wall until Officer Hilbert exited the vehicle, at which time defendant fled. N.T. 2/19/14 at 179-180. Officer Hilbert was unable to locate defendant, but did recover a firearm from the location where defendant had fled. N.T. 2/19/14 at 109, 180, 200, 206. Police recovered 13 nine-millimeter fired cartridge casings from the area where defendant had been seen firing a gun. N.T. 2/19/14 at 104; 2/20/14 at 49-50. Analysis of the fired cartridge casings found at both the Hawthorne Street shooting of Herbert and Story and the

---

[6] Milburn actually saw more than defendant merely firing a gun. He saw defendant shoot and kill one Levon Wilson with the gun after a dispute at the craps game. Because, as discussed below, the gun used by defendant to shoot Levon Wilson turned out to be the murder weapon in the killings here at issue, the Commonwealth proved that defendant fired the gun on September 11, 2002, to establish his access to the murder weapon. However, because defendant was not on trial for the killing of Wilson in the case at bar, the Commonwealth agreed not to present any evidence that the gun had been used on September 11, 2002, in a murder. Defendant was convicted of murdering Wilson in a separate trial, as is more fully discussed below.

[7] Officer Hilbert was previously named Christine Vincent. N.T. (Motion Hearing) 2/18/14 at 22.

Whitehall Projects shooting determined that all the casings had been fired in the firearm recovered by Officer Hilbert from the location from which defendant had fled. N.T. 2/20/14 at 58, 63-64.

Police made numerous attempts to locate defendant from late 2002 until September 2003. N.T. 2/24/14 at 34-43. Defendant was ultimately located and apprehended on September 30, 2003 at the Rodeway Inn in [Maple Shade], New Jersey, where he had registered under an alias. N.T. 2/24/14 at 41-43, 50, 65. Defendant asked what he was under arrest for, to which the arresting officers stated "[f]or some shootings." N.T. 2/24/14 at 71. Defendant responded that "[he] liked shooting people." N.T. 2/24/14 at 71-72. Defendant further provided a different alias at the time of his arrest. N.T. 2/24/14 at 78.

On February 7, 2004, while incarcerated, defendant was involved in an incident in the cellblock. N.T. 2/24/14 at 100-101. When asked by a corrections officer, "[w]hy do you keep doing these things?" defendant responded "I don't give a shit, I got two bodies, I'm going to die in prison, I don't care." N.T. 2/24/14 at 101.

Trial Court Opinion, filed December 9, 2014 at pp. 2-6.

## II. DISCUSSION

An appellate court's review of a PCRA court's grant or denial of relief "is limited to determining whether the court's findings are supported by the record and the court's order is otherwise free of legal error." *Commonwealth v. Green*, 14 A.3d 114, 116 (Pa. Super. 2011) (internal quotations omitted). The reviewing court "will not disturb findings that are supported by the record." *Id.*

### A. After-Discovered Evidence

Defendant first claims that the Court erred in failing to grant him an evidentiary hearing regarding after-discovered evidence in the form of an affidavit from witness Brian Heard. Statement of Matters at ¶ B. This claim is without merit.

At defendant's trial, the Commonwealth presented the testimony of Brian Heard. Heard testified that on the evening of September 11, 2002, two days after the murders at issue in the instant case, he saw defendant fire a handgun and then saw defendant flee the scene, escaping

6

through the Whitehall Projects.[8] N.T. 2/20/2014 at 131, 139. It was ultimately determined that the handgun that Heard saw defendant fire was the same weapon used to commit the murders in the instant case. N.T. 2/20/2014 at 63-64. Accordingly, Heard's testimony established defendant's access to the firearm.

In an affidavit attached to defendant's Amended Petition, Heard recanted his testimony, claiming that he only heard the sound of gunshots on September 11, 2002 and did not see the shooter. Amended Petition, dated 4/26/2018 at p. 15, Exhibit I. Moreover, Heard claimed that he and another Commonwealth witness, Ronald Milburn, conspired to pin the shooting on defendant so that they could get off of probation. *Id.* Finally, Heard claimed that he told an Assistant District Attorney ("ADA") this information in 2005; however, the ADA told Heard not to tell anyone that or the ADA would send Heard to jail for a long time. *Id.* Heard failed to identify the ADA he spoke to in 2005, describing him only as a "short white man." *Id.*[9]

To obtain relief under the PCRA based on after-discovered evidence, defendant must plead and prove that the evidence: 1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; 2) it is not merely cumulative; 3) will not be used solely to impeach the credibility of a witness; and (4) would likely compel a different verdict. 42 Pa.C.S. § 9543(a)(2)(vi); *Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004).

---

[8] Heard actually saw more than defendant merely firing a gun. He saw defendant shoot and kill one Levon Wilson. However, because defendant was not on trial for the killing of Wilson in the instant case, the Commonwealth agreed not to present any evidence that the gun was used in a murder. Defendant was convicted of murdering Wilson in a separate trial. *See* CP-51-CR-0207721-2004.

[9] In addition to submitting Heard's affidavit in the instant PCRA petition, defendant also presented the affidavit as newly-discovered evidence in a PCRA petition that he filed in his murder conviction stemming from the September 11, 2002 shooting, which was dismissed as untimely by the Honorable Rose Marie DeFino-Nastasi. *See* PCRA Court Opinion at docket number CP-51-CR-0207721-2004, filed October 17, 2016. Specifically, Judge DeFino-Nastasi concluded that defendant could have obtained the information from Heard at an earlier date if he had acted with due diligence, since the affidavit was not submitted until approximately ten years after defendant's trial in that case, but defendant had known of Heard since at least 2005. *Id.* at Exhibit A. The Superior Court affirmed the dismissal, agreeing that defendant's "bare declaration of bald ignorance does not meet the burden to plead and prove why the information now proffered as after-discovered 'evidence' could not have been known and obtained earlier by the exercise of due diligence." *See Commonwealth v. Real*, No. 2514 EDA 2016 (Pa. Super. March 4, 2009) at 9-10 (unpublished memorandum opinion).

Here, even if true, Heard's recantation does not entitle defendant to relief because it fails to meet the requirement that it would likely result in a different verdict at a new trial. In determining whether after-discovered evidence would result in a different verdict, a court is to "consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Commonwealth v. Padillas*, 997 A.2d 356, 365 (Pa. Super. 2010), *app. denied*, 14 A.3d 826 (Pa. 2010) (citing *Commonwealth v. Parker*, 431 A.2d 196, 200 (Pa. 1981)).

First, it is well established that such recantations are "extremely unreliable." *See Commonwealth v. Small*, 189 A.3d 961, 977 (Pa. 2018) (noting that there is "no less reliable form of proof, especially where it involves an admission of perjury"). Moreover, Heard's testimony merely established defendant's access to the murder weapon, as Heard was only permitted to testify that he saw defendant firing the weapon on September 11, 2002, and was barred from testifying that those shots resulted in a third murder in addition to the two murders at issue in the instant case.

Moreover, the recantation did not exculpate defendant. While Heard now says he did not see defendant firing the gun, he still acknowledges that he heard shots at the time the gun was allegedly fired by defendant. Therefore, even if Heard's recantation were found to be credible, it would still be consistent with defendant having possession of the murder weapon two days after the murders here at issue.

Most importantly, the Commonwealth presented additional evidence regarding the September 11, 2002 shooting that independently established defendant's access to the murder weapon. At trial, Officer Christine Hilbert testified that on September 11, 2002, she and her partner were on patrol in the Whitehall Projects when they heard the sound of gunshots. N.T.

8

2/19/2014 at 177-78. As they were driving towards the area where the gunshots were coming from, Officer Hilbert saw a male running from the scene. N.T. 2/19/2014 at 179. When the male spotted the officers, he flattened his body against a building. *Id.* Once Officer Hilbert exited the police vehicle, the man ran away. *Id.* She thereafter went to the scene to assist. N.T. 2/19/2014 at 180. After the scene was secured, Officer Hilbert retraced her steps to where she saw the male running to see if she could locate him. N.T. 2/19/2014 at 200. When she approached the buildings where she saw the male hiding, she observed a gun on the ground next to a tree. *Id.* This was the gun that was ultimately determined to be the weapon used in the September 11, 2002 shooting and in the instant murders, as described above. N.T. 2/20/2014 at 63-64.

In addition to her testimony regarding the September 11, 2002 shooting, Officer Hilbert testified that approximately one month following the shooting, she saw a wanted poster at her police district and recognized defendant, the person in the poster, as the person she saw fleeing the scene of the shooting. N.T. 2/19/2014 at 208-09. Moreover, at trial, Officer Hilbert identified defendant as the perpetrator. Accordingly, Officer Hilbert's testimony provided compelling evidence that defendant had access to the murder weapon used in the instant case.

Brian Heard and Officer Hilbert were both corroborated by Ronald Milburn, who was also present at the scene of the September 11, 2002 shooting and had known defendant for many years. The Commonwealth presented to the jury Milburn's preliminary hearing testimony in which he too identified defendant as the shooter. N.T. 2/20/2014 at 138-39, 151-53, 166; N.T. 2/24/2014 at 130, 144.

Finally, the Commonwealth presented additional evidence that overwhelmingly established defendant's guilt. First, Terrell Boyd testified that on the night of the murders at

issue in the instant case, he and defendant were driving around the Frankford section of Philadelphia and looking to rob someone. N.T. 2/19/2014 at 20-21. When the pair parked on Mulberry Street, they got out of the car and walked to Hawthorne Street. N.T. 2/19/2014 at 26. Boyd stopped at the corner while defendant walked around the corner. N.T. 2/19/2014 at 25-27. Boyd testified that he then heard the sound of gunshots being fired, so he ran back to the car, and defendant followed soon after. N.T. 2/19/2014 at 27-28. As they fled the scene, defendant told Boyd he had shot one person in the head and one person twice in the back as the person tried to run away. N.T. 2/19/2014 at 29-30. In addition to Boyd's testimony, the Commonwealth also presented evidence that following the shooting, defendant evaded capture by fleeing to New Jersey. N.T. 2/24/2014 at 41-43. When defendant was ultimately arrested, he told police that "[he] like[d] shooting people." N.T. 2/24/2014 at 71-72. Finally, while incarcerated, defendant purportedly confessed to the murder, telling a corrections officer: "I don't give a shit, I got two bodies, I'm going to die in prison, I don't care." N.T. 2/24/2014 at 101. Due to the overwhelming amount of evidence, independent of Heard's testimony, establishing defendant's guilt, it is without question that the information contained in Heard's affidavit, even if true, would not have changed the verdict. Accordingly, Heard's recantation does not constitute after-discovered evidence that would give rise to relief under the PCRA.

### B. Brady Violation

Defendant next claims that the Court erred in dismissing his petition without a hearing on defendant's claims pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Statement of Matters at ¶ A. Specifically, defendant argues that the Commonwealth failed to disclose the following exculpatory evidence: 1) the recantation of witness Brian Heard; 2) identification information concerning a witness named "Lisa;" 3) statements allegedly made by Herbert's mother regarding

10

what Herbert had told her; and 4) contact information concerning Milburn's mother. Statement of Matters at ¶ A. These claims are without merit.

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), exculpatory evidence not disclosed to the defense will give rise to a due process violation and will require a new trial if the exculpatory evidence is "material" either to guilt or punishment. 373 U.S. at 87; *see also* Pa.R.Crim.P. 573(B)(1)(a) (specifying, as mandatory discovery, "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth"). If the police possess evidence that is favorable to the defense, then the Commonwealth is deemed to be responsible for its disclosure even if it is solely in the possession of the police. *See Commonwealth v. Lambert*, 884 A.2d 848, 853 (Pa. 2005) (quoting *Brady*, 373 U.S. at 87). Defendant must therefore establish three elements: "(1) suppression by the prosecution (2) of evidence, whether exculpatory or impeaching, favorable to the defendant, (3) to the prejudice of defendant." *Commonwealth v. Tedford*, 960 A.2d 1, 30 (Pa. 2008).

### 1. Witness Brian Heard

Defendant claims that the Commonwealth failed to provide exculpatory information provided by Brian Heard, the witness whose recantation affidavit is discussed in section II(A), above. Statement of Matters at ¶ A. Specifically, defendant argues that the Commonwealth failed to inform the defense that Heard had told an unnamed prosecutor that he was going to lie about defendant's involvement. Amended Petition, dated 4/26/2018, Exhibit I. This claim is without merit.

As discussed above, in his affidavit, Heard claimed that in May 2005, he told an ADA that he and Milburn had agreed to lie and pin the September 11, 2002 murder on defendant so that they could get off of probation, and that the ADA told him not to tell this information to

11

anyone. *See* Amended Petition, dated 4/26/2018, Exhibit I. However, under *Brady*, exculpatory evidence not disclosed to the defendant will only give rise to a due process violation and require a new trial if the evidence is material, meaning, "when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Tedford*, 960 A.2d at 30 (internal quotations omitted). Here, for the same reasons set forth above in Section II(A), above, it is clear that even if this information had been disclosed to defendant, it would not have resulted in a different verdict. For that reason, defendant is entitled to no relief on his first *Brady* claim.

2. Identification Information Regarding "Lisa"

Defendant next claims that the Commonwealth never disclosed the full name, address, or statements of a potential witness known as "Lisa." Statement of Matters at ¶ A. Defendant alleges that police received information from Shawn Young and Katoria Davis that there was a female witness to the shooting named "Lisa." Amended Petition, dated 4/26/2018 at pp. 2-3, 6, Exhibits A & F. Defendant further alleges that the Commonwealth never provided him with any statement from "Lisa," or any of her contact information. *Id.*

While it is true that both Mr. Young and Ms. Davis told police that someone named "Lisa" may have witnessed events relevant to the murders, *see* Amended Petition, dated 4/26/2018, Exhibits A & F, there is nothing in the evidence in the case, nor in any of the multiple petitions and exhibits filed by defendant, that suggests that "Lisa" was ever located by either the Commonwealth or the defense. Defendant failed to present or proffer any evidence suggesting that "Lisa" had been found, that she could somehow exculpate defendant, or that any information about "Lisa" was withheld from the defense. Accordingly, the Court properly denied defendant's *Brady* claim regarding "Lisa" without a hearing.

12

### 3. Decedent Marcus Herbert's Statements to his Mother

Defendant next claims that the Commonwealth withheld exculpatory evidence regarding statements made by one of the decedents, Marcus Herbert, to his mother. Statement of Matters at ¶ A. Defendant alleges that Herbert's mother told detectives that her son said he "knows what happened to him," and that the Commonwealth should have disclosed the "statements from Herbert or Herbert's mother." Statement of Matters at ¶ A; Amended Petition, dated 4/26/2018, Exhibit F. As stated above, Herbert did not die until more than one year after the shooting.

In support of his claim, defendant attaches Detective Egenlauf's October 12, 2002, activity sheet, in which the Detective states that Herbert's mother had told him that her son briefly was able to communicate while in the hospital and said that he knew what happened to him, but that she was unable to interview her son any further. Amended Petition, dated 4/26/2018, Exhibit F. Defendant also attaches an activity sheet, dated November 26, 2002, in which Detective Egenlauf states that he went to Hahnemann Hospital to interview Herbert. Amended Petition, dated 4/26/2018, Exhibit G. At that time, Herbert was awake and alert, but was unable to communicate any information. *Id.*

Nowhere does defendant present or proffer any evidence suggesting that Herbert told his mother anything that would tend to exculpate the defendant, or assist the defense in any manner. Accordingly, the Court properly denied defendant's *Brady* claim regarding Herbert's statements to his mother without a hearing.

### 4. Contact Information of Milburn's Mother

Defendant claims that the Commonwealth withheld the contact information of witness Ronald Milburn's mother. Statement of Matters at ¶ A. At trial, Ronald Milburn was unavailable and his prior preliminary hearing testimony was introduced by the Commonwealth. N.T.

2/24/2014 at 122-42; N.T. 2/20/2014 at 6-11, 119-25. Milburn testified at the preliminary hearing that he witnessed defendant shooting the possible murder weapon at a local bar a week prior to the murders, and that two days after the murders Milburn again saw defendant shooting what could have been the murder weapon. N.T. 2/24/2014 at 126-42. Defendant alleges that, had Milburn's mother been contacted, she would have refuted her son's testimony. Supplemental PCRA Petition, dated 8/6/2018 at p. 3.

In particular, defendant alleges that Milburn's mother would have testified that Milburn's testimony was a lie, and that the Commonwealth violated *Brady* by not producing the mother's contact information. Supplemental PCRA Petition, dated 8/6/2018 at p. 3. At trial, defense counsel stated that defendant's mother had told defense counsel that Milburn's mother had said to her that Milburn's testimony was untrue. N.T. 2/19/2014 at 255-56. However, defendant never presented a statement or witness certification from Milburn's mother to show that she actually had anything to say that was in any way helpful to the defense. Nor did he present or proffer any evidence that the Commonwealth had knowledge of any contact information for Milburn's mother that was not available to the defense. Accordingly, the Court properly denied defendant's *Brady* claim regarding contact information for Milburn's mother without a hearing.

C. *Ineffective Assistance of Counsel*

Defendant next claims that trial counsel was ineffective on the grounds that: 1) counsel failed to investigate defendant's alibi defense; 2) counsel failed to properly prepare for trial because he did not investigate or interview an alleged eyewitness named "Lisa," three friends of co-defendant Terrell Boyd, and Karl May; 3) counsel failed to retain a DNA expert to test the hat collected by police, the gun, and any and all physical evidence; 4) counsel failed to attack the completeness of the police investigation; 5) counsel failed to object when the Commonwealth

14

called Karl May as a witness after the witness broke sequestration; 6) counsel failed to make a *Batson* objection to the use of peremptory challenges by the Commonwealth to strike all potential Hispanic voir dire persons; 7) counsel failed to move to prohibit the Commonwealth from introducing evidence of an unrelated crime; and 8) counsel failed to object to the identification of defendant made by Officer Christine Hilbert. Statement of Errors at ¶¶ C(1)-C(8).

Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Reid*, 99 A.3d 427, 435 (Pa. 2014) (citing *Commonwealth v. Miller*, 819 A.2d 504, 517 (Pa. 2002)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super.), *app. denied*, 956 A.2d 433 (Pa. 2008).

1. Failure to Investigate Defendant's Alibi Defense

Defendant's first ineffective assistance of counsel claim is that trial counsel was ineffective for failing to investigate a potential alibi defense. Statement of Matters at ¶ C(1). This claim is without merit.

Defendant alleges that trial counsel was aware that defendant had a part-time job at a warehouse at the time of the murders and that defendant believes he was more than likely at work when the murders occurred. Amended Petition, dated 4/26/2018 at pp. 5-6. However, defendant also told trial counsel that he was not absolutely certain that he was at work on that date. Amended Petition, dated 4/26/2018 at p. 6.

While defendant alleges that he might have been at work, he failed to present or proffer any evidence to show that he was actually at work at the time of the murders, such as potential alibi witnesses or documentation. Accordingly, the Court properly denied his claim that trial counsel was ineffective for failing to pursue an alibi defense.

2. Failure to Investigate and Interview Witnesses

Defendant next claims that trial counsel was ineffective for failing to investigate and interview witnesses. Statement of Matters at ¶ C(2). Those witnesses are: "Lisa;" Karl May; and three friends of Terrell Boyd. Id. This claim is without merit.

The first witness, "Lisa," is the purported witness, discussed above, who was never located by either the Commonwealth or defense. See Section II(B)(2), supra. Because defendant has neither presented nor proffered any evidence that "Lisa" would have testified to anything helpful to the defense, or that she could have been found through reasonable investigation, defendant cannot prove that defense counsel was ineffective for failing to investigate and interview this witness.

16

The second witness, Karl May, who is the step-father of murder victim Marcus Herbert, testified for the Commonwealth at trial and was cross-examined by defense counsel. N.T. 2/19/2014 at 230-50. While trial counsel may not have interviewed May before the trial, our appellate courts "have never held that trial counsel is obligated to interview every Commonwealth witness prior to trial." *Commonwealth v. Washington*, 927 A.2d 586, 598 (Pa. 2007). Where, as here, trial counsel vigorously cross-examines the Commonwealth's witnesses, counsel's election not to interview Commonwealth witnesses will not render counsel's representation to be constitutionally deficient. *Commonwealth v. Smith*, 17 A.3d 873, 888-89 (Pa. 2011). Moreover, defendant has not presented nor proffered any evidence tending to prove that had trial counsel interviewed May, some evidence would have been uncovered that could have helped the defense.

In his Statement of Matters and Amended Petition, defendant specifically alleges that May could have led trial counsel to another relevant witness. Statement of Matters ¶ C(2); Amended Petition, dated 4/26/2018 at p. 6. In support of this contention, defendant attached as an exhibit to his petition, a police activity sheet dated August 24, 2004, which indicates that May told detectives that he knew of an unnamed female eyewitness. Amended Petition, dated 4/26/2018, Exhibit H. However, the activity sheet merely states that May "has knowledge of a female eyewitness to this incident who has never been interviewed." *Id.* Defendant has neither presented nor proffered any evidence that May ever provided police, or anyone else, with any additional information regarding this witness. Nor has defendant presented or proffered evidence that had trial counsel interviewed May, that May would have provided him with the contact information for this witness. In addition, the record is devoid of evidence that this unnamed witness would have provided any evidence helpful to the defense.

17

Defendant also alleges that his trial counsel was ineffective for failing to investigate and interview three friends of Terrell Boyd: Michael Simpson, Maurice McCoy, and Alan Rothwell. Statement of Matters at ¶ C(2); Amended Petition, dated 4/26/2018 at p. 6. As stated above, Terrell Boyd was defendant's coconspirator, and cooperated with the prosecution. Among other things, Boyd testified that he and defendant were childhood friends who were driving around on the day of the murders looking for someone to rob. Defendant argues that Boyd's three friends would have testified that Boyd and defendant were not friends and that Boyd disliked defendant. Amended Petition, dated 4/26/2018 at p. 6.

However, defendant failed to submit affidavits or witness certifications from any of these three witnesses to prove that they actually would have provided evidence helpful to the defense, and that they were available at the time of trial and willing to testify. Accordingly, defendant could not have proven at a hearing that trial counsel would have developed evidence helpful to the defense had he investigated or interviewed these witnesses.

Therefore, defendant failed to present or proffer any evidence to show that trial counsel could have assisted the defense by investigating or interviewing any of the five witnesses identified by defendant. Accordingly, the Court properly denied without a hearing his ineffective assistance of counsel claim premised upon these witnesses.

3. Failure to Retain a DNA Expert

Defendant next claims trial counsel was ineffective for failing to retain a DNA expert to test the hat collected by police, the gun, and any and all physical evidence. Statement of Matters at ¶ C(3). Defendant claims that testing done by a defense DNA expert would have eliminated him as a suspect. Amended Petition, dated 4/26/2018 at p. 7. This claim is without merit.

18

At trial, the Commonwealth presented testimony from an expert in DNA analysis. The Commonwealth's DNA expert testified that blood found on the hat recovered at the scene belonged to decedent Marcus Herbert. N.T. 2/20/2014 at 95-96. The expert also testified that the DNA taken from the sweatband of the same hat was compared to the DNA sample from defendant and the results were inconclusive. N.T. 2/20/2014 at 90-93, 95-96. Defendant argues that he was entitled to a defense DNA expert, and that a thorough test done by a defense DNA expert would have eliminated defendant's DNA from any of the physical evidence. Amended Petition, dated 4/26/2018 at p. 7.

Defendant's claim fails for three reasons. First, the testimony of the DNA expert did not incriminate the defendant. Therefore, it was unquestionably reasonable for trial counsel not to retain a DNA expert to conduct independent testing. Second, even if further testing showed that the DNA found on the sweatband of the hat was conclusively not from the defendant, that would not exonerate defendant, nor in any way undermine the Commonwealth's case. Finally, as to the gun and "any and all physical evidence," defendant has neither presented nor proffered any evidence suggesting that a DNA test regarding of any piece of evidence would have assisted the defense.

Accordingly, the Court properly denied without a hearing defendant's ineffective assistance of counsel claim premised upon counsel's failure to hire a DNA expert.

4. Failure to Attack the Completeness and Reliability
of the Investigation Conducted by Police

Defendant also claims that trial counsel was ineffective for failing to attack the completeness and reliability of the investigation done by police. Statement of Matters at ¶ C(4). Defendant specifically argues that counsel erred by neglecting to present evidence that the police failed to do the following: (a) interview "Lisa"; (b) interview the female witness identified by

Karl May; (c) compare Boyd's DNA to the DNA on the hat found on the scene; (d) consider Boyd to be the primary suspect; and (e) show Boyd's photograph to "Lisa, Lane and Herbert."[10] Statement of Matters at ¶ C(4); Amended Petition, dated 4/26/2018 at pp. 8-9.

### (a) & (b) Failure to Investigate and Interview "Lisa" and the Witness Identified by May

As stated in section II(C)(2), above, neither "Lisa," nor the female witness identified by Karl May, was ever identified or interviewed. With the record devoid of evidence that either putative witness would have provided evidence favorable to the defense, defendant cannot show that trial counsel could have helped defendant by attacking the police investigation of these two witnesses.

### (c) Failure to Compare Boyd's DNA to the DNA Found on the Hat

As discussed in section II(C)(3), above, defendant neither presented nor proffered any evidence that additional DNA analysis would have been helpful to the defense. Accordingly, there is no reason to believe that the police failure to compare the DNA of Boyd to the DNA found on a hat at the scene prejudiced defendant.

### (d) Failure to Consider Boyd to be the Primary Suspect

Defendant's assertion that police did not adequately investigate Boyd as a suspect is belied by the record. In the course of the police's investigation, Boyd admitted his involvement and cooperated with police, testifying at trial and ultimately pleading guilty. N.T. 2/19/2014 at 33-37. Boyd testified that he was with defendant at the time of the murders, heard the shots, and that defendant admitted to him that he committed the murders afterwards. N.T. 2/19/2014 at 25-

---

[10] The Statement of Matters states in paragraph C(4)(e), that the police failed to show "*appellant's* photograph," not Boyd's photograph, to the three witnesses. However, it is apparent from the section of the *pro se* petition cited in the Statement of Matters, that defendant's complaint is that the police failed to show Boyd's photograph to these witnesses. *See* Amended Petition, dated 4/26/2018 at p. 8 ("no police personnel displayed Boyd's photograph to Lane, Herbert, or 'Lisa'").

30. Defendant has neither presented nor proffered any evidence to support his claim that had police conducted a more thorough investigation, it would have revealed Boyd to be the shooter or led to Boyd being the "primary suspect."

(e) Failure to Show Boyd's Photograph to Witnesses

Defendant neither presented, nor proffered, any evidence to support his claim that evidence favorable to the defense would have been uncovered if police had shown Boyd's photograph to witnesses "Lisa," Lane, and Herbert. As discussed above, "Lisa" was never able to be identified or interviewed. Therefore, the police could not have shown her any photographs. In addition, there is nothing in the record suggesting that either Lane or Herbert would have identified Boyd as the shooter had they been shown Boyd's photograph. Accordingly, defendant has not proven that counsel was ineffective for failing to attack the Commonwealth's investigation for failing to show witnesses Herbert's photograph.

Finally, the record establishes that trial counsel did aggressively and extensively attack the Commonwealth's investigation, and did forcefully argue that Boyd was the shooter. During closing argument, defendant's trial counsel described Boyd as a "Commonwealth witness who is bought and paid for with a deal." N.T. 2/24/2014 at 214. Trial counsel then went through Boyd's statements and his testimony illustrating inconsistencies for the jury. N.T. 2/24/2014 at 214-17. Trial counsel also stated that, "it turns out Terrell Boyd set these guys up," and that anybody who was looking at the time of the incident saw a black male running away after the shots were fired.[11] N.T. 2/24/2014 at 217. Trial counsel then went through the descriptions from eye witnesses saying they saw a black male running, and told the jury these people were describing Terrell Boyd. N.T. 2/24/2014 at 218-24.

---

[11] Boyd is a black male, while defendant is a Hispanic male.

Accordingly, the defendant has failed to present or proffer evidence to prove that counsel's failure to attack the police investigation in the specific manners set forth in the Statement of Matters denied defendant effective representation. No relief is due.

5. **Failure to Object to Karl May's testimony after May Allegedly Violated Sequestration**

Defendant claims that trial counsel was ineffective for failing to object to Karl May's testimony on the basis that May violated sequestration. Statement of Matters at ¶ C(5). This argument is without merit.

May, the step-father of decedent Herbert, had given a statement to police that he had seen a black male running from the scene of the shooting. At trial, in violation of a sequestration order, he was present during a morning of testimony, including the testimony of Terrell Boyd. When he was called as a Commonwealth witness, he changed his description of the individual he saw running from the shooting from a black male to a Hispanic male. Defendant now claims that counsel should have kept May off the stand by objecting on the ground of the violation of sequestration.

This argument fails for two reasons. First, May's prior statement to police was very helpful to the defense, since May's description of the perpetrator as a black male tended to inculpate Boyd and exculpate defendant. Defense counsel had no reason to know that May was going to change his description during his trial testimony and had good reason to believe that he would help the defense. In fact, May did help the defense, since trial counsel was able to bring out his helpful statement to police as a prior inconsistent statement after May changed his description of the perpetrator. N.T. 2/19/2014 at 233-35, 238-48.

In addition, an objection based on the sequestration order would unquestionably have been denied by the Court. Under Pennsylvania Rule of Evidence 615, the Court may order

22

sequestration in order to prevent a witness from learning from the testimony of another witness. The decision whether or not to permit a witness who has broken a sequestration order to testify is within the sound discretion of the trial judge. *Commonwealth v. Smith*, 324 A.2d 483, 492 (Pa. Super. 1974). In exercising its discretion, the trial court should consider: 1) the seriousness of the violation, 2) the impact of the testimony on the witness, 3) the probable impact upon the outcome of the trial, 4) whether the witness intentionally violated the court's sequestration order, and 5) whether the calling party procured the witness's disobedience. *Commonwealth v. Mokluk*, 444 A.2d 1214, 1216 (Pa. Super. 1982).

Here, there was no evidence that May was aware of the sequestration order or that his violation was intentional. As the step-father of one of the decedents, he had a great interest in observing the trial. Similarly, there was no evidence that the Commonwealth was aware that he had been in the courtroom or was otherwise complicit in the violation. In addition, the Court permitted the defense during the trial to bring out and fully explore the violation to minimize any prejudice to the defendant. N.T. 2/19/2014 at 250. Because "[o]nly in extreme cases of flagrant and intentional violations may a witness be barred from testifying," the Court would have denied any defense motion to keep May off the witness stand. *See Ohlbaum on the Pennsylvania Rules of Evidence* § 615.09[1] (2020 ed.) (Hon. Daniel J. Anders, General Editor).

Accordingly, trial counsel's failure to object to May's testimony based on the violation of sequestration could not have prejudiced defendant and denied him effective assistance of counsel. No relief is due.

23

## 6. Failure to Make a *Batson* Objection

Defendant claims trial counsel was ineffective for failing to make a *Batson*[12] objection to the use of peremptory challenges by the Commonwealth to strike all potential Hispanic jurors. Statement of Matters at ¶ C(6).

It is well-settled "that the government denies a defendant equal protection of the laws when it 'puts him on trial before a jury from which members of his race have been purposefully excluded.'" *Commonwealth v. Uderra*, 862 A.2d 74, 83 (Pa. 2004) (*citing Batson v. Kentucky*, 476 U.S. 79, 85 (1986)). *Batson* established a three-part inquiry for evaluating a defendant's claim of racial discrimination in jury selection:

> First, the defendant must make out a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Uderra*, 862 A.2d at 83, *citing Hernandez v. New York*, 500 U.S. 352, 358-59. *Commonwealth v. Harris*, 817 A.2d 1033, 1042 (Pa. 2002). To satisfy its obligations during the second part of the *Batson* inquiry, the Commonwealth need not provide explanations that are "persuasive or even plausible." *Commonwealth v. Roney*, 79 A.3d 595, 619 (Pa. 2013), *quoting Purkett v. Elem*, 514 U.S. 765, 767-768 (1995). "Rather, the issue at [the second] stage 'is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reasons offered will be deemed race neutral.'" *Id.* Once race-neutral explanations are provided, the "persuasiveness of the facially neutral explanation proffered by the Commonwealth is relevant" and the court is to make a determination as to whether the

---

[12] *Batson v. Kentucky*, 476 U.S. 79 (1986) (prohibiting the use of peremptory challenges on account of race).

moving party has proven purposeful discrimination. *Id., quoting Commonwealth v. Williams*, 980 A.2d 510, 529-30 (Pa. 2009).

Here, trial counsel did raise a *Batson* objection based on the Commonwealth's use of peremptory challenges to strike three Hispanic males: juror numbers 11 and 27 from day one of juror selection, and juror number 55 from day two of juror selection. N.T. 2/11/2014 at 218-22. After determining that there were legitimate race-neutral reasons for striking each of those jurors, the Court denied defense counsel's *Batson* claim. N.T. 2/11/2014 at 224-36. Defendant now claims that trial counsel was ineffective for failing to include in his *Batson* claim, juror number 98 from day one, a Hispanic female. Amended Petition, dated 4/26/2018 at p. 11.

The record refutes defendant's argument. During the *Batson* challenge, the Court found that defendant satisfied the first prong of *Batson* by establishing a *prima facie* case of discrimination in that the Commonwealth used peremptory challenges on three out of three Hispanic venirepersons. Therefore, adding a fourth challenged Hispanic venireperson could not have benefited defendant regarding the required *prima facie* showing.

As to the prosecution's requirement to present a credible race-neutral justification for the peremptory challenges, the record shows that during voir dire, juror number 98 told the Court that her daughter's boyfriend was in federal prison on gun charges. N.T. 2/10/2014 at 250. She described herself as "kind of" close with him and that he had been dating her daughter for 12 years. N.T. 2/10/2014 at 250-51. This is a clearly legitimate race-neutral justification for using a peremptory challenge on the juror. As a result, including this juror in defense counsel's *Batson* challenge would not have affected the outcome of that challenge.

Accordingly, trial counsel was not ineffective for failing to raise a *Batson* objection to the fourth Hispanic venireperson. No relief is due.

7. **Failure to Move to Prohibit Evidence Defendant Fired a Gun In the Air One Week Before the Murders and Failure to Object to Prosecutor's Closing Comments Regarding that Evidence**

Defendant claims trial counsel was ineffective for failing to move to prohibit the Commonwealth from introducing evidence of another crime, that is, that defendant had fired a gun in the air a week prior to the incident. Defendant also claims that trial counsel was ineffective for not objecting to comments made by the prosecutor regarding that evidence during her closing argument. Statement of Matters at ¶ C(7). These arguments are without merit.

The evidence here at issue consisted of preliminary hearing testimony of Ronald Milburn, which was read to the jury since Milburn was unavailable for trial. In that testimony, Milburn stated that he had seen defendant in a bar approximately one week prior to the murders firing a gun into the air. According to Milburn, that gun looked like the same 9 millimeter weapon that he also saw defendant shooting two days after the murders, and which turned out to be the murder weapon. N.T. 2/20/2014 at 58, 63-64, 138-39, 151-53, 166; N.T. 2/24/2014 at 130, 144; see p. 5, *supra.*

It is well-established that evidence that "[a] weapon shown to have been in a defendant's possession may properly be admitted into evidence, even though it cannot positively be identified as the weapon used in the commission of a particular crime, if it tends to prove that the defendant had a weapon similar to the one used in the perpetration of the crime. Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." *Commonwealth v. Williams,* 640 A.2d 1251, 1260 (Pa. 1994). Accordingly, evidence that defendant possessed a gun approximately one week prior to the murders that looked like the murder weapon was clearly admissible. As a result, trial counsel could not have been ineffective for failing to object to that evidence.

26

As for the prosecutor's closing, it is true that the ADA commented that defendant had the apparent murder weapon in his possession prior to the day of the murders. N.T. 2/24/2014 at 275. This was proper argument based upon properly admitted evidence. Therefore, counsel could not have been ineffective for failing to object to it.

8. Failure to Object to the Identification of Defendant made by Police Officer Christine Hilbert

Defendant claims that trial counsel was ineffective for failing to object to the admission of Officer Christine Hilbert's identification of defendant. Statement of Matters at ¶ C(8). Defendant alleges that this identification was previously ruled inadmissible by Judge DeFino-Nastasi. Statement of Matters at ¶ C(8); Amended Petition, dated 4/26/2018 at p. 14.

The ruling at issue was made by Judge DeFino-Nastasi in the PCRA proceedings regarding defendant's separate murder case, at docket number CP-51-CR-0207721-2004, in which he was charged with killing Levon Wilson at a craps game two days after the murders of Herbert and Story here at issue. Because ballistics evidence showed that the same weapon was used in all three murders, the Commonwealth was permitted, in the case at bar, to prove that defendant fired the weapon at the craps game, in order to show that he had possession of the murder weapon used in the double murder two days later. *See* pp. 5-6, *supra*.[13]

In both trials, Officer Christine Hilbert made an in-court identification of defendant as the person she observed fleeing from the scene of the shooting at the craps game. In the PCRA proceedings regarding the Wilson murder, Judge DeFino-Nastasi opined that Officer Hilbert's in-court identification of defendant "most likely should not have been permitted" during the Wilson murder trial. *See* Trial Court Opinion, filed December 9, 2014, at p. 15; N.T. (CP-51-

---

[13] As stated above, the Commonwealth was only permitted to prove that defendant fired the weapon at the craps game, and was barred from proving that defendant used the gun shoot and kill Wilson at that game. *See* p. 5 n. 6, *supra*.

CR-0207721-2004) 5/3/2013 at 6, 13-20.[14] Now defendant claims that trial counsel in the case at bar was ineffective for not objecting to Hilbert's identification on the basis of Judge DeFino-Nastasi's opinion.

It is true that, under the coordinate jurisdiction rule, a judge is ordinarily bound by the decision of another judge of coordinate jurisdiction on the same issue. However, the rule only applies to decisions made in the same case. *See, e.g., Commonwealth v. Hernandez,* 39 A.3d 406, 412 (Pa. Super. 2012), *app. denied,* 63 A.3d 1244 (Pa. 2013). Therefore, an objection by trial counsel based on an argument that the trial judge was bound by Judge DeFino-Nastasi's decision in another case would have been frivolous.

Moreover, Judge DeFino-Natasi's decision was premised upon a failure of the Commonwealth to disclose to the defense a prior out-of-court identification made by Officer Hilbert. In the case at bar, however, the prior identification was fully disclosed pretrial. This Court addressed the issue as follows in its opinion on defendant's direct appeal:[15]

> Here, unlike the Wilson murder trial, defense counsel had full disclosure of all of the identifications made by Hilbert well before trial, and was able to raise all of the identification issues in an extensive pretrial hearing. *See* N.T. (Motion) 2/18/14 at 7-92 (hearing on motion to suppress identification evidence). Following the hearing, this Court excluded Hilbert's pretrial identification of defendant in the prep session with the assistant district attorney, but permitted Hilbert to testify that she had recognized defendant on the poster in the police district, and allowed her to make an in-court identification. Nothing in Judge DeFino-Nastasi's decision, which was premised upon a claim of discovery violations arising at a different trial, barred that decision.

Trial Court Opinion, filed December 9, 2014 at pp. 15-16. Accordingly, any objection that trial counsel would have made to the admission of Officer Hilbert's in-court identification based on

---

[14] Notwithstanding this finding, Judge DeFino-Nastasi denied the PCRA petition on the ground that counsel's error did not prejudice defendant. *Id.* at 20-21.

[15] Defendant set forth the issue of the Hilbert identification testimony in his Statement of Errors for his direct appeal, but decided not to raise the issue in the Superior Court. *See* Superior Court Opinion, dated November 20, 2015, at p. 2 (listing the issues on direct appeal).

Judge DeFino-Nastasi's decision would have been meritless. Therefore, trial counsel was not ineffective for failing to make such an objection.

### D. The PCRA Court erred by Denying Defendant's Discovery Request

Defendant claims that the Court committed an abuse of discretion by denying defendant's discovery request. Statement of Matters at ¶ D. This claim is without merit.

In defendant's Second Supplemental Petition, he requested "the entire Police investigation file." Second Supplemental Petition, dated 2/8/2019 at p. 5. Defendant alleged that since "the Police conducted a 'shoddy' investigation and the Commonwealth has repeatedly withheld exculpatory evidence," defendant was entitled to review the police investigation file in order to "discover any other exculpatory evidence being withheld." *Id.*

In PCRA proceedings in which the death penalty is not at issue,[16] "no discovery shall be permitted at any stage of the proceedings, except upon leave of court after a showing of exceptional circumstances." Pa.R.Crim.P. 902(E)(1). Our Supreme Court has specifically held that a PCRA petitioner is not entitled to inspect the Commonwealth's files for the purpose of determining the existence of exculpatory evidence in support of a *Brady* claim. *Commonwealth v. Tedford*, 228 A.3d 891, 908-10 (Pa. 2020).[17] Here, just as in *Tedford*, defendant's discovery request to review all of the police files "is comprised entirely of conjecture that damaging documents may exist in those files." *Id.* For that reason, defendant's discovery request was properly denied.

---

[16] As discussed above, while the Commonwealth sought a death sentence in this case, the jury returned a verdict of life in prison.
[17] Because *Tedford* was a collateral challenge to a sentence of death, the Court applied the more permissive discovery standard for death penalty cases, allowing discovery upon a showing of "good cause," rather than "exceptional circumstances." *See* Pa.R.Crim.P. 902(E)(2). Accordingly, the holding of *Tedford* applies here *a fortiori.*

## III. CONCLUSION

For all of the foregoing reasons, the Court's order dismissing defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

Commonwealth v. Fernando Real
Type of Order: Opinion

CP-51-CR-0008511-2008
CP-51-CR-0008526-2008

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

John Belli, Esquire
2 Penn Center, Suite 900
Philadelphia, PA 19102-1532

Type of Service:       ( ) Personal (X) First Class Mail () Other, please specify:

**District Attorney:**

Lawrence Goode, Esquire
Interim Supervisor, Appeals Unit
Office of the District Attorney
Three South Penn Square
Philadelphia, PA 19107-3499

Type of Service       ( ) Personal () First Class Mail (X) Other, please specify: *Interoffice*

**Additional Counsel/Party:**

Joseph D. Seletyn, Esquire
Prothonotary
Office of the Prothonotary – Superior Court
530 Walnut Street, Suite 315
Philadelphia, PA 19106

Type of Service:       ( ) Personal (X) First Class Mail ( ) Other, please specify:

**Dated: March 12, 2021**

*Megan O'Donnell*

Megan O'Donnell
Law Clerk to Hon. Glenn B. Bronson